

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-07-00171-CR

_____


JEFFERY LEWIS LAIRD, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the Fourth Judicial District Court
Rusk County, Texas
Trial Court No. CR06-218


Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

According to accomplice witness M.C., Jeffery[1] Lewis Laird beat the elderly Thomas Powers with a pipe "three feet long, bent in the middle, [with] a bracket on the end." The severely injured Powers was discovered the next morning and died almost two months later without ever identifying his assailant.[2]

Dr. Keith Pinckard testified that Powers' cause of death was his numerous health problems "acting together, occurring as a result proximately of the blunt force trauma."

---

[1]We note that the trial court's judgment spells Laird's first name as "Jeffrey"; however, Laird signs his name as "Jeffery." Therefore, we have used the spelling "Jeffery" in this opinion.

[2]When Brandon Winfrey and his cousin M.C., who was thirteen years old at the time, concluded the police might be investigating a burglary they had committed, they had asked Laird if he knew where they could obtain a vehicle to leave town. Laird told M.C. and Winfrey he knew where they could get a truck. Later that evening, the three went to Powers' residence. Powers operated a trash pickup service in rural Rusk County, Texas, and Laird had worked for him in the past.

The three approached Powers' residence through a field behind the house, and Laird proceeded around the side of the house. M.C. saw Laird cut the telephone line to the house with a butterfly knife and then enter the residence through the garage. On entering the house, Laird began beating Powers with the pipe. After beating Powers senseless, Laird took Powers' wallet, checkbook, and truck keys. M.C. searched the kitchen for something else to steal. The three then left the residence and drove to Hickey Pond where Laird disposed of the pipe. Based on information obtained from Laird, the police recovered from Hickey Pond a pipe matching the description given by M.C. Powers' DNA was detected on the recovered pipe.

When Powers failed to show up for work the next morning, James Sprayberry, a neighbor who routinely checked on Powers due to Powers' health problems, went to the residence to check on him. Sprayberry discovered Powers sitting at the dining room table with his head on the table. It appeared Powers had tried to stop the bleeding with paper towels.

The State indicted Laird for capital murder. The jury found Laird guilty of the lesser-included offense of murder and assessed punishment at life imprisonment. Laird argues on appeal that the trial court erred in denying Laird's requested instruction on causation and that the evidence is legally and factually insufficient to corroborate the accomplice-witness testimony. We affirm the judgment of the trial court, concluding (1) the accomplice-witness testimony was sufficiently corroborated and (2) the trial court did not err in denying Laird's requested instruction.

*(1) The Accomplice-Witness Testimony Was Sufficiently Corroborated*

Laird argues, in his first point of error, that there is insufficient corroboration of the accomplice witnesses.[3] Under the accomplice-witness rule, one cannot be convicted on the testimony of an accomplice unless that testimony is corroborated by other evidence tending to connect the defendant with the offense committed. TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005). Laird argues the evidence corroborates only Laird's activities in Fort Worth after the assault, and corroborates only that Laird was present at the scene of the crime. Laird argues, given that the accomplices "received relatively lenient treatment from the district attorney in return for testifying against Appellant," the corroboration is insufficient.

---

[3]Laird argues that the standards applicable to legal and factual sufficiency of the evidence should apply to whether the corroboration of the accomplice witnesses is sufficient. But corroboration of the accomplice-witness testimony is a statutory requirement imposed by the Legislature and is not subject to the usual legal and factual sufficiency standards. *Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999). Laird does not challenge the sufficiency of the evidence other than arguing the evidence of corroboration is insufficient.

To determine the sufficiency of corroboration, we must view the corroborating evidence in the light most favorable to the jury's verdict. *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994). The test for weighing the sufficiency of corroborating evidence is to eliminate from consideration the accomplice's testimony, and then examine the remaining testimony and evidence to determine if there is evidence that tends to connect the defendant with the commission of the offense. *Munoz v. State*, 853 S.W.2d 558, 559 (Tex. Crim. App. 1993); *Hall v. State*, 161 S.W.3d 142, 149 (Tex. App.—Texarkana 2005, pet. ref'd).

The mere presence of an accused and an accomplice at the scene of the crime or shortly before or after commission of an offense is not in itself sufficient corroboration. *Golden v. State*, 851 S.W.2d 291, 294 (Tex. Crim. App. 1993). But the presence of the accused with the accomplice witness, *when coupled with other circumstances*, may be sufficient to corroborate the testimony of the accomplice witness. *Brown v. State*, 672 S.W.2d 487, 489 (Tex. Crim. App. 1984); *Jeffery v. State*, 169 S.W.3d 439, 447 (Tex. App.—Texarkana 2005, pet. ref'd). When determining if corroboration of an accomplice witness is sufficient, we consider all of the facts and circumstances, whether the corroborative evidence be circumstantial or direct. *Brown*, 672 S.W.2d at 488.

Viewed in the light most favorable to the jury's verdict, the nonaccomplice evidence shows more than Laird's mere presence at the scene of the crime. Laird had a drop of blood on his shoe consistent with Powers' DNA. Out of all the clothing of the three suspects tested by the police, Laird's shoe was the only item containing Powers' blood. After disposing of the pipe, Laird fled to Fort Worth with his accomplices. A convenience store video camera in Fort Worth captured Laird

4

and the accomplices together several hours after the assault. When arrested in Fort Worth, Laird and his accomplices were still in possession of Powers' truck. A search of Powers' pickup truck produced Laird's driver's license, a butterfly knife, and a check for $1,300.00 which designated Laird as the payee and Powers as the payor. A jacket and a pen, found in the bed of the truck, contained DNA consistent with Laird's DNA. After being arrested, Laird gave information to the State that led to the discovery of the pipe. Laird's presence at the scene coupled with the other circumstances tends to connect Laird to the murder.

Laird argues the post-assault activities are insufficient to corroborate the accomplice testimony. The nonaccomplice testimony does not have to directly link the accused to the crime, does not have to establish guilt beyond a reasonable doubt, and need not prove all the elements of the alleged offense. *Gill*, 873 S.W.2d at 48; *Munoz*, 853 S.W.2d at 559; *Jeffery*, 169 S.W.3d at 448. The State was not required to corroborate every detail testified to by the accomplices. The facts and circumstances discussed above tend to connect Laird with the offense. The corroboration of the accomplice testimony was sufficient. Accordingly, we overrule Laird's first point of error.

*(2) The Trial Court Did Not Err in Denying Laird's Requested Instruction*

Laird also argues the trial court erred in denying his requested instruction on causation. The submitted jury charge included the following instruction on causation:

> A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient.

5

At trial, Laird requested the following instruction be included in the court's charge:

> If you believe from the evidence or have a reasonable doubt thereof that the death of Thomas Powers, if any, was caused by some natural bodily ailment or disease, you will find the defendant not guilty.

The trial court denied Laird's requested instruction.

"A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." TEX. PENAL CODE ANN. § 6.04(a) (Vernon 2003). This section contains two parts. The first part requires a "but for" causal connection to be established between the defendant's conduct and the resulting harm. *Robbins v. State*, 717 S.W.2d 348, 351 (Tex. Crim. App. 1986); *Remsburg v. State*, 219 S.W.3d 541, 545 (Tex. App.—Texarkana 2007, pet. ref'd). Section 6.04(a)'s "but for" requirement can be satisfied when either "(1) the defendant's conduct may be sufficient by itself to have caused the harm, regardless of the existence of a concurrent cause; or (2) the defendant's conduct and the other cause together may be sufficient to have caused the harm." *Hale v. State*, 194 S.W.3d 39, 42 (Tex. App.—Texarkana 2006, no pet.). The second part of the statutory definition contains an exception to the above general principle. This exception relieves the defendant of criminal responsibility if the concurrent cause was clearly sufficient to produce the result and the conduct of the actor was clearly insufficient. *Remsburg*, 219 S.W.3d at 545.

"The function of the jury charge is to instruct the jury on applying the law to the facts." *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). "[A]n erroneous or an incomplete

jury charge jeopardizes a defendant's right to a jury trial because it fails to properly guide the jury in its fact-finding function." *Id.* When determining whether the court erred by refusing the instruction, we first must determine whether there is evidence to justify giving the instruction to the jury. "When evidence . . . raises a defensive issue, and the defendant properly requests a jury charge on that issue, the trial court must submit the issue to the jury." *Muniz v. State*, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993); *see Gibson v. State*, 726 S.W.2d 129, 132 (Tex. Crim. App. 1987). "[A]n accused has the right to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of the defense." *Hamel v. State*, 916 S.W.2d 491, 493 (Tex. Crim. App. 1996).

Notwithstanding the fact that Laird was entitled to an instruction on concurrent causation,[4] Laird was not entitled to the instruction he requested. The instruction requested by Laird states that if the death of Powers "was caused by some natural bodily ailment or disease, you will find the defendant not guilty." The requested instruction requires the jury to acquit merely if there is a concurrent cause. This is not an accurate statement of the law. A defendant is criminally responsible if the defendant's conduct and another cause together caused the harm. *Hale*, 194 S.W.3d at 42.

---

[4]The autopsy revealed that Powers had numerous health problems at the time of death. Powers suffered from liver disease, bed sores, adhesions in the intestines (a side effect of surgeries performed while hospitalized), prior tuberculosis (which was inactive at the time of death), chronic obstructive pulmonary disease, and moderate, non-life-threatening coronary disease. Before the assault, Powers suffered from severe respiratory problems. Dr. Pinckard testified these problems were probably the result of a bout with tuberculosis years before the assault. Sprayberry testified Powers' respiratory difficulties were so severe that Powers normally slept sitting up so he could breathe easier. Dr. Pinckard testified Powers suffered a skull fracture during the assault. As a result of the skull fracture and resulting surgeries, Powers developed seizures, had a cardiopulmonary arrest, developed a small bowel obstruction, and developed an infection which caused his liver and kidneys to shut down. Dr. Pinckard testified these were all health problems which flowed from the original trauma to Powers' head. Dr. Pinckard believed Powers' death was caused by Powers' numerous health problems "acting together, occurring as a result proximately of the blunt force trauma." Powers testified, "[T]he event which set up that chain of events, going back to the original event that caused all of that, was the trauma to his head that he received."

The State argues that the above evidence did not raise the issue of concurrent causation. According to the State, there was no evidence of other causes sufficient to cause death absent the wound to the head and no evidence the trauma caused by Laird's blow was insufficient to cause death. On cross-examination, Dr. Pinckard admitted acute renal failure, peritonitis, and liver failure could be caused by something other than brain trauma. Although Dr. Pinckard believed the conditions causing Powers' death flowed from the brain trauma, Dr. Pinckard agreed Powers' condition could have "had nothing whatsoever to do with the brain trauma." Dr. Pinckard's testimony is some evidence that other causes may have been sufficient to cause Powers' death and that Laird's conduct may not have been sufficient to cause Powers' death. While the evidence is weak, Laird was entitled to an instruction on concurrent causation.

The mere fact that a victim has a medical condition, that causes an assault to result in more severe harm than it would in another victim, does not relieve a defendant of criminal responsibility. A concurrent cause does not relieve a defendant of criminal responsibility unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor was clearly insufficient. *See* TEX. PENAL CODE ANN. § 6.04(a); *Remsburg*, 219 S.W.3d at 545. The requested charge does not require the jury to find either that the concurrent causes were sufficient, alone, to cause the death of Powers or that Laird's conduct was insufficient to cause the death. *See Hutcheson v. State*, 899 S.W.2d 39, 42 (Tex. App.—Amarillo 1995, pet. ref'd). A trial court does not err when it denies a requested instruction which is misleading or does not properly state the law. *Traylor v. State*, 43 S.W.3d 725, 730 (Tex. App.—Beaumont 2001, no pet.). Because the requested instruction was not a substantially correct statement of the law, the trial court did not err in denying Laird's request.

Further, the instruction given by the trial court was substantially correct and adequate to fully protect the defendant. The instruction was identical to Section 6.04(a). A special requested charge may be properly refused when the trial court has provided a correct statement of the law which adequately protects the defendant. *Dutton v. State*, 874 S.W.2d 206, 209 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd). Laird's second point of error is overruled.

Because there is sufficient corroboration of the accomplice-witness testimony and the trial court did not err in denying the requested instruction on causation, we affirm the judgment of the trial court.

Josh R. Morriss, III
Chief Justice

Date Submitted:     May 27, 2008
Date Decided:       July 8, 2008

Do Not Publish