# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00561-CR

**Carlos Quintanilla, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF CALDWELL COUNTY, 421ST JUDICIAL DISTRICT
### NO. 2006-097, HONORABLE TODD BLOMERTH, JUDGE PRESIDING

## O P I N I O N

A jury found appellant Carlos Quintanilla guilty of intoxication manslaughter and assessed punishment at fourteen years in prison and a $10,000 fine. *See* Tex. Penal Code Ann. § 49.08 (West Supp. 2008). Appellant contends that the evidence is legally and factually insufficient to sustain the guilty verdict because the State failed to prove that he caused the deceased's death. We find the evidence to be sufficient and affirm the conviction.

## BACKGROUND

At 2:45 a.m. on April 19, 2000, off-duty Austin Police Officer Jim Beck was driving south on highway 183 to his home in Lockhart when he was passed by a south-bound Ford Taurus that Beck estimated was traveling at 80 to 85 miles-per-hour. As Beck followed the Taurus, he saw it alternately speed up, slow down, and swerve between the traffic lanes. Beck testified that he saw

two persons in the Taurus, a male driver and a female passenger. Beck lost sight of the Taurus when it crested a hill just outside Lockhart. When Beck, who was about 200 yards behind, reached the top of this hill, the Taurus was not to be seen. Beck stopped, turned, and began to drive north. He soon spotted the Taurus in a ditch on the east side of the highway, where it had left the road after crossing the north-bound lanes.

Beck found appellant lying on the ground beside the Taurus's open driver's door. A woman identified as Mary Parlin was in the passenger seat. Both appellant and Parlin were obviously injured, but Beck could tell from the sounds she was making that Parlin's injuries were more serious. It was later determined that both appellant and Parlin were intoxicated.

Appellant and Parlin were taken by helicopter to Brackenridge Hospital in Austin. Dr. James Kempema was one of the physicians who treated Parlin in the emergency room. Kempema testified that when Parlin arrived at the hospital, her heart rate was elevated and her blood pressure was low, indicating that she was bleeding internally. Efforts to elevate Parlin's blood pressure by giving her fluids intravenously were unsuccessful, and she developed an abnormal heart rhythm and then lapsed into pulseless electrical activity. The doctor described this condition as "electrical activity on the cardiac monitor . . . [but] there are no pulses that we can palpate in any of the typical areas that we feel pulses . . . which means that either the blood pressure is unacceptably low or the heart is simply not pumping." Kempema testified that Parlin would have died within minutes without further action. Using CPR and cardiac stimulating drugs, emergency room personnel were able to restore Parlin's heart beat and stabilize her condition.

Kempema testified that as a result of the accident, Parlin sustained severe brain trauma, facial fractures, a pelvic fracture, two broken femurs, and a collapsed lung. She was in a

deep coma. She could not talk, her eyes were non-responsive, and her only motor ability was posturing, "which is essentially a very primitive brain stem reflex that results from severe brain trauma."

Parlin remained in the hospital until May 26, 2000, when she was transferred to a nursing home. She entered a different nursing home on July 31, 2000. Records from the second nursing home introduced in evidence show that Parlin was in a semicomatose state throughout her stay in the facility. She was unable to speak and most of her movements were involuntary, but she had some voluntary movement and could respond to her name and to simple commands. At first, Parlin was able to sit in a Gerichair and was taken to group activities, but she became increasingly bedridden over time. Parlin was fed through a gastrostomy tube. She also had a permanent tracheostomy tube, and she sometimes required additional oxygen through the tube. There are references throughout the records to lung congestion and thick discharges from the tracheostomy tube. Parlin's brother, Kevin Parlin, testified that she was in a vegetative state in the nursing home, unable to communicate, and that she manifested only involuntary movements. He said that Parlin was on a breathing machine "some of the time."

There is little evidence regarding the circumstances of Parlin's death. A nurse's note states that EMS was called to the nursing home on October 26, 2002, and Parlin was transferred to a hospital.[1] The note indicates that a quantity of fluid had been suctioned from the tracheostomy tube and that Parlin's skin was "clammy and pale." A nurse's note dated November 2, 2002, states that Parlin's mother had called the nursing home to say that "the decision has been made to stop all

---

[1] No records from this hospitalization were introduced in evidence.

3

treatment in the hospital and that she will not be coming back . . . ." Kevin Parlin was asked by the prosecutor, "[D]id your mother and your family have to make the decision to turn off the life support machine?" He answered, "Yes." Parlin died in the hospital on November 3, 2002. The death certificate, introduced in evidence, states that the immediate cause of death was right lung empyema due to a chronic vegetative state that was the result of a closed head injury.[2] The death certificate states that Parlin had been suffering from the empyema for months.

## DISCUSSION

A person commits intoxication manslaughter if he operates a motor vehicle in a public place while intoxicated, and by reason of that intoxication he causes the death of another by accident or mistake. *Id*. § 49.08(a). At trial, appellant's defense was that he was not operating the Taurus. Appellant testified that Parlin was driving the car, which belonged to her, and he was the passenger. On appeal, however, appellant does not deny that he was operating the vehicle. Instead, he contends that the State failed to prove, either legally or factually, that his intoxicated operation of the vehicle and the resulting accident caused Parlin's death.

### *Legal Sufficiency*

When there is a challenge to the sufficiency of the evidence to sustain a criminal conviction, the question presented is whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Johnson v. State*, 23 S.W.3d 1, 11

---

[2] Empyema is defined as the presence of pus in a bodily cavity (as in the pleural cavity). *Webster's International Dictionary* 744 (3d ed. 1986).

4

(Tex. Crim. App. 2000).  In a legal sufficiency review, all the evidence is reviewed in the light most favorable to the verdict, and it is assumed that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Clayton*, 234 S.W.3d at 778.

In Texas, the law of criminal causation as it relates to the defendant's conduct is as follows:

> A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient.

Tex. Penal Code Ann. § 6.04(a) (West 2003).  The statute has two parts or prongs:  (1) the general rule of causation—"A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause," and (2) the exception to the rule when there is a concurrent cause—"unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." *See Remsburg v. State*, 219 S.W.3d 541, 545 (Tex. App.—Texarkana 2007, pet. ref'd). The concurrent cause exception presupposes that the result would not have occurred but for the actor's conduct.  If the actor's conduct was not a cause of the result under the general rule, it could not be a concurrent cause to which the exception might apply.

Appellant's challenge to the sufficiency of the evidence invokes both prongs of section 6.04(a). First, appellant contends that the State failed to prove that Parlin's death would not have occurred but for his conduct.  This argument, in effect, asserts that appellant's conduct was not

shown to be a cause of Parlin's death under the general rule. Second, appellant contends that the evidence fails to show that his conduct was alone sufficient to cause Parlin's death. By this argument, which invokes the concurrent cause exception, appellant asserts that the lung empyema and the family's decision to discontinue life support were clearly sufficient to cause Parlin's death and that his conduct was clearly insufficient.

Appellant contends that, on this record, Parlin's death was caused by her lung infection combined with the family's decision to discontinue efforts to artificially prolong her life. Neither of these causes of death, appellant argues, was shown to have resulted from his conduct. In appellant's view, they were independent causes of death having no but-for relationship to his conduct or to the automobile accident.

Contrary to appellant's assertion, the State proved that the fatal lung empyema was a result of his conduct. The "cause of death" section of the death certificate, which is obviously a prescribed form, instructs the certifier to first enter the "IMMEDIATE CAUSE (Final disease or condition resulting in death)," and then to "[s]equentially list conditions, if any, leading to immediate cause. Enter UNDERLYING CAUSE (*disease or injury that initiated events resulting in death*) LAST." The doctor who certified Parlin's death entered "Right lung empyema" as the immediate cause of death, "Chronic vegetative state" as the condition leading to the immediate cause, and "Closed head injury" as the underlying cause. The death certificate states that the right lung empyema was "due to (or . . . a likely consequence of)" the chronic vegetative state, and that the chronic vegetative state was "due to (or . . . a likely consequence of)" the closed head injury.

The emergency room physician testified that severe brain trauma was one of the many injuries Parlin sustained in the accident. This testimony and the death certificate create an unbroken

6

chain of causation from appellant's conduct and the resulting automobile accident, to the brain trauma and coma, to the chronic vegetative state, to the lung empyema and death. Viewed in the light most favorable to the verdict, the evidence is sufficient to support a finding that the fatal lung empyema would not have occurred but for appellant's conduct. *See Jones v. State*, 582 S.W.2d 129, 133-34 (Tex. Crim. App. 1979) (holding that defendant was criminally responsible for death resulting from complications arising out of injuries inflicted by defendant); *Barrera v. State*, 756 S.W.2d 884, 885 (Tex. App.—San Antonio 1988, pet. ref'd) (same).

The record also contradicts appellant's assertion that the decision to discontinue Parlin's life support was an independent cause of death unrelated to his conduct. Dr. Kempema, the emergency physician, was asked by the prosecutor "if a decision had to be made at a future time by the family to turn off the life support, and she died, was the cause of death from these injuries received in this motor vehicle accident?" The doctor answered, "I can comment to the extent to say that she was put on life support as a result of the injuries she sustained because of the injuries in the accident." Parlin might not have died when she did had the family not elected to discontinue treatment aimed at prolonging her life, but she also would not have died when and in the manner she did but for the injuries she sustained as a result of appellant's conduct, the injuries that left her in a coma, resulted in the development of the fatal lung empyema, and forced her family to make its difficult decision. *See Felder v. State*, 848 S.W.2d 85, 89-90 (Tex. Crim. App. 1992).[3] Viewing the

---

[3] In *Felder*, the defendant stabbed the deceased in the head with a pair of scissors, and the medical examiner testified that this wound was the cause of death. 848 S.W.2d at 89. Although brain dead, the deceased was temporarily placed on a life support system and his organs continued to function. *Id*. The court rejected the defendant's contention that it was the removal of the life support system, and not his conduct, that caused the deceased's death, reasoning that but for the defendant's actions, the deceased would not have been on life support and would not have died when

7

evidence in the light most favorable to the verdict, the family's decision to stop further life support measures was at most a concurrent cause of Parlin's death, not an alternative cause that resulted in her death independent of appellant's conduct. *See Barnette v. State*, 709 S.W.2d 650, 651 (Tex. Crim. App. 1986) (distinguishing between concurrent causation and alternative causation).

We now turn to appellant's contention that the State failed to prove that his conduct was alone sufficient to cause Parlin's death. Appellant urges that, on this record, the lung empyema and the discontinuance of life support were concurrent causes of death clearly sufficient to cause Parlin's death and that his conduct was clearly insufficient.

This argument is also contradicted by the record. Kempema testified that Parlin would have died in the emergency room if not for the extraordinary resuscitative efforts of the emergency medical team. Viewed in the light most favorable to the verdict, this evidence supports a finding beyond a reasonable doubt that appellant's conduct was sufficient in itself to cause Parlin's death. *See Thompson v. State*, 93 S.W.3d 16, 20-21 (Tex. Crim. App. 2001) (holding that defendant's conduct was not "clearly insufficient" to cause victim's death in light of evidence showing that without medical intervention, injuries inflicted by defendant could have been fatal). Although medical intervention may have succeeded in delaying Parlin's death, and even if the lung empyema and the discontinuance of life support were concurrent causes sufficient to result in her death, the evidence shows that Parlin would not have developed the empyema or required life support but for appellant's conduct. Appellant's conduct was not "clearly insufficient"

---

that support was removed. *Id*. at 90. Parlin was not shown to be brain dead when life support was discontinued, but the same principle applies here. But for appellant's conduct, Parlin would not have required life support or developed the lung empyema that was the immediate cause of her death.

8

to cause Parlin's death within the meaning of the concurrent cause exception. *See Felder*, 848 S.W.2d at 90 n.1.

The evidence is legally sufficient to prove that, by his conduct, appellant was criminally responsible for Parlin's death. Point of error one is overruled.

### *Factual Sufficiency*

In a factual sufficiency review, all the evidence is considered equally, including the testimony of defense witnesses and the existence of alternative hypotheses. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); *Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.). Although due deference still must be accorded the fact finder's determinations, particularly those concerning the weight and credibility of the evidence, the reviewing court may disagree with the result in order to prevent a manifest injustice. *Johnson*, 23 S.W.3d at 9; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). The evidence will be deemed factually insufficient if the evidence supporting the verdict is so weak as to make the finding of guilt clearly wrong or manifestly unjust, or if the verdict is against the great weight and preponderance of the available evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); *Johnson*, 23 S.W.3d at 11.

Appellant's arguments in support of his factual insufficiency claim are essentially restatements of the arguments he made in support of his legal insufficiency claim, with the caveat that "[a]ny evidence which could somehow be seen as legally sufficient to support a rational jury's conclusion [that he caused Parlin's death] is nevertheless so weak that the Court's confidence in the jury's verdict should be undermined." We have already explained how, contrary to appellant's

9

arguments, the evidence rationally supports both a finding that Parlin would not have died but for appellant's conduct and a finding that appellant's conduct was in itself sufficient to cause Parlin's death, even if the other factors cited by appellant also contributed to that result. Moreover, the only link in the chain of causation from the automobile accident to Parlin's death that was disputed at trial was appellant's role as the driver of the car, a fact that was resolved against him by the jury and that he essentially concedes on appeal. Even when viewed in a neutral light, the evidence supporting the conclusion that appellant's conduct caused Parlin's death is neither so weak nor so against the great weight of the available evidence as to make the conclusion clearly wrong or manifestly unjust.

The evidence is factually sufficient to prove that, by his conduct, appellant was criminally responsible for Parlin's death. Point of error two is overruled.

The judgment of conviction is affirmed.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed

Filed: July 14, 2009

Publish

10