

# IN THE
# TENTH COURT OF APPEALS

## No. 10-12-00480-CR

**ANDREA L. JOHNSON,**

                                    **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                    **Appellee**

---

**From the 278th District Court
Madison County, Texas
Trial Court No. 11,663**

---

## MEMORANDUM  OPINION

---

In two issues, appellant, Andrea L. Johnson, challenges his convictions for one count of aggravated assault of a public servant, a first-degree felony, and one count of assault of a public servant, a third-degree felony.  *See* TEX. PENAL CODE ANN. §§ 22.01(a)(1), (b)(1), 22.02(a)(1), (b)(2)(B) (West 2011).  Specifically, appellant contends that the trial court erred in failing to:  (1) charge the jury on the lesser-included offense of misdemeanor assault; and (2) provide the jury with the defense's requested instruction on "unlawful conduct."  We affirm.

# I.    BACKGROUND

Appellant, an inmate at the Ferguson Unit of the Texas Department of Criminal Justice, was charged by indictment with one count of aggravated assault of a public servant and one count of assault of a public servant.[1]   This matter stems from an incident that transpired at the Ferguson Unit on November 19, 2010.

Several inmates testified that, on the day in question, they observed corrections officers use force on another inmate while the inmates were in the chow hall.  At the time of the initial use of force, Officer Jason Claborn recalled that there were approximately 100 or 120 inmates in the chow hall and five to nine corrections officers. The inmate involved in the initial incident was eventually subdued.  However, Officer Claborn testified that the atmosphere in the chow hall remained tense after the initial incident transpired.

In an attempt to maintain calm, officers instructed the inmates to sit down at the tables in the chow hall.  Officer Mitch Puckett explained that inmates are supposed to stay seated until they are instructed to get up and leave the chow hall.  However, one inmate, appellant, refused to sit down when instructed.  Officer John Reinke repeatedly ordered appellant to sit down.  Appellant refused Officer Reinke's orders and "was yelling out some stuff."  Assistant Warden Wayne Brewer observed that appellant was not complying with Officer Reinke's orders.  Because he believed that it was necessary

---

[1] The indictment also contained an enhancement paragraph referencing appellant's underlying August 6, 1998 conviction for capital murder, which originated in the Criminal District Court No. 4 of Dallas County, Texas.

to quell the situation for everyone's safety, Assistant Warden Brewer entered the chow hall to help.

Appellant testified that he refused Officer Reinke's orders because he wanted to speak with Assistant Warden Brewer about the "unnecessary use of force" involved in the initial incident. Appellant asserted that Assistant Warden Brewer pushed him in the chest and told him to sit down. Officer Claborn disputed appellant's testimony. According to Officer Claborn, Assistant Warden Brewer simply put his hand out and ordered appellant to sit down. Officer Claborn denied seeing Assistant Warden Brewer touch appellant at this time.

Appellant steadfastly refused to sit down. Appellant testified that he told Assistant Warden Brewer not to touch him. Shortly thereafter, appellant recalled feeling someone either push or pull him from behind. At this point, appellant punched Assistant Warden Brewer in the face. Appellant believed that Assistant Warden Brewer "was fixing to punch [appellant] so [appellant] punched [Assistant Warden Brewer] first." Appellant then turned around and punched Officer Reinke, which, according to appellant, resulted in Officer Reinke dropping "the gas . . . out of his hand."

Multiple officers intervened, took appellant to the ground, and placed him in hand restraints. Appellant alleged that the officers punched and kicked him while he was on the ground in the hand restraints. In addition, appellant proffered the testimony of several other inmates who corroborated appellant's allegations that officers beat him while he was on the ground. The testifying officers, on the other hand, denied appellant's allegations.

Once appellant was subdued and returned to his prison cell a few minutes later, Officer William Davidson and Nurse Elizabeth Smith examined appellant for injuries. Appellant was strip searched at this time. Officer Davidson noticed that appellant did not have any marks on his hands, but appellant did have some blood on the back of his shorts. Officer Davidson did not observe any injury on appellant's back that could have caused the blood stain on appellant's shorts. Nurse Smith recounted that appellant told her that he had cuts on his head and shoulder. Nurse Smith testified that appellant had two small abrasions—0.1 and 0.2 centimeters long, respectively—on his head that were not actively bleeding. Neither of these abrasions required treatment because Nurse Smith believed them to be too small. In addition, Nurse Smith recounted that appellant had a contusion on his left shoulder that appeared to be fresh and was three centimeters by six centimeters in area. According to Nurse Smith, appellant did not have any other injuries.

Assistant Warden Brewer and Officer Reinke, on the other hand, had more substantial injuries. Officer Reinke recounted that appellant's punch caused him to bruise on the side of his head. In addition, appellant's punch broke Officer Reinke's glasses. Assistant Warden Brewer sustained significant injuries to his nose. Assistant Warden Brewer bled profusely from his nose after appellant punched him, which necessitated his transfer to the emergency room. Assistant Warden Brewer testified that, as a result of appellant's punch, his face was fractured in three places, his "nose was broken down," and his septum was deviated. Assistant Warden Brewer has

undergone four surgeries to repair the damage caused, and he noted that additional surgeries are necessary.

In any event, on cross-examination, appellant admitted that he could have avoided the situation had he sat down when ordered to do so. He also acknowledged that he hit Assistant Warden Brewer first. When asked whether Assistant Warden Brewer hit him, appellant stated:

> I know he tried. Once I know—I know for sure that I thought he was going to hit me. I can't say if he hit me or not. I told you, people were hitting me but I was to[o] busy trying to protect my face. My face is my main concern. I was trying to protect my face. I'm not being—worrying about who was hitting me in my body.

Later, the State proffered appellant's written statement for inclusion in the record. In his statement, appellant noted the following:

> On 11-9-10 around 10:00 a.m. in the north chow hall[,] I tried talking to Major W. Brewer after witnessing an inmate assaulted by staff members. I was surrounded by a couple of officers. Major Brewer pushed me in the chest and told me to sit down. I felt another officer push me. I felt I was going to be beat up, as I was on 6-20-10. I then took the offensive defending my health and well[-]being. I struck Major Brewer once and turned towards Officer Reinke who tried to gas me. To further show that I was gonna [sic] be next to be an assaulted[;] look for a videotape of this incident[,] and check medical for my examination to uphold they [sic] wrongdoing[.] [T]hese officers present only hit me in my legs, arms[,] and back not to leave bruises.

At the conclusion of the evidence, the jury found appellant guilty on both counts. The jury found the enhancement paragraph in the indictment to be true and assessed punishment as follows: (1) fifteen years' incarceration in the Institutional Division of the Texas Department of Criminal Justice for the aggravated-assault-of-a-public-servant charge; and (2) two years' confinement on the assault-of-a-public-servant charge. The

trial court ordered that these sentences run consecutively with appellant's underlying sentence for capital murder. Subsequently, appellant filed a motion for new trial, which was overruled by operation of law. *See* TEX. R. APP. P. 21.8(a), (c). This appeal followed.

## II. LESSER-INCLUDED-OFFENSE INSTRUCTION

In his first issue, appellant contends that the trial court committed reversible error by failing to provide the jury with a lesser-included-offense charge on misdemeanor assault.

### A. Applicable Law

We review a trial court's refusal to include a lesser-included-offense instruction for an abuse of discretion. *See Threadgill v. State*, 146 S.W.3d 654, 666 (Tex. Crim. App. 2004) (en banc). An offense is a lesser-included offense if, among other reasons, it is established by proof of the same or less than all the facts required to establish the commission of the offense charged. *See* TEX. CODE CRIM. PROC. ANN. art. 37.09(1) (West 2006); *Hall v. State*, 225 S.W.3d 524, 527 (Tex. Crim. App. 2007). To determine whether a defendant is entitled to an instruction on a lesser-included offense, the Texas Court of Criminal Appeals has developed a two-step test. *See Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012) (citing *Hall*, 225 S.W.3d at 535-36; *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993) (en banc); *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex. Crim. App. 1985) (en banc)). Initially, a court must determine whether the proof necessary to establish the charged offense also included the lesser offense. *Id.; see Hall*, 225 S.W.3d at 535-36. If so, the court then considers whether the evidence shows that, if

an appellant is guilty, he is guilty only of the lesser offense. *See Cavazos*, 382 S.W.3d at 383.

To determine whether an offense qualifies as a lesser-included offense under article 37.09(1), Texas courts utilize the cognate-pleadings approach. *Id.* at 382 (citing *Ex parte Watson*, 306 S.W.3d 259, 271 (Tex. Crim. App. 2009) (per curiam) (op. on reh'g)). Under this approach, an offense is a lesser-included offense if the indictment for the greater-inclusive offense either (1) alleges all of the elements of the lesser-included offense or (2) alleges elements plus facts (including descriptive averments, such as non-statutory manner and means, that are alleged for purposes of providing notice) from which all of the elements of the lesser-included offense may be deduced. *See id.* This first step is a question of law which does not depend on the evidence presented at trial and calls on the court to compare the elements alleged in the indictment with the elements of the lesser offense. *See id.*; *see also Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011); *Hall*, 225 S.W.3d at 535.

Step two involves considering whether there is some evidence that would permit a rational jury to find that, if appellant is guilty, he is guilty only of the lesser offense. *See Cavazos*, 382 S.W.3d at 383; *Hall*, 225 S.W.3d at 536. "This second step is a question of fact and is based on the evidence presented at trial." *Cavazos*, 382 S.W.3d at 383. A defendant is entitled to a lesser-included-offense instruction if some evidence from any source raises a fact issue on whether he is guilty of only the lesser offense, regardless of whether such evidence is weak, impeached, or contradicted. *Id.* However, a defendant is not entitled to a lesser-included-offense instruction simply because the evidence

supporting the greater charged offense is weak, the evidence supporting the greater charge is discredited or weakened during cross-examination, or the jury might disbelieve crucial evidence pertaining to the greater offense. *See Bignall v. State*, 887 S.W.2d 21, 24 (Tex. Crim. App. 1994) (en banc). That is, "there must be some evidence directly germane to a lesser[-]included offense for the factfinder to consider before an instruction on a lesser[-]included offense is warranted." *Id.* "The evidence must establish the lesser-included offense as 'a valid, rational alternative to the charged offense.'" *Rice*, 333 S.W.3d at 145 (quoting *Hall*, 225 S.W.3d at 536).

## B.      Discussion

On appeal, appellant argues that he is entitled to a charge on misdemeanor assault because misdemeanor assault is a lesser-included offense of assault of a public servant, and because the record contains more than a scintilla of evidence demonstrating that he is only guilty of misdemeanor assault. Appellant hinges this issue on his contention that the correctional officers were criminally or tortiously abusing their status as public servants at the time of the assault.

### 1.  Step 1

In *Hall v. State*, the Texas Court of Criminal Appeals stated that:

[a]ssault of a public servant requires proof of misdemeanor assault plus proof of four additional elements:

1) the person assaulted was a public servant;

2) the actor knew that the person he assaulted was a public servant;

3) the person assaulted was discharging official duties at the time of the assault;

4) the person assaulted was lawfully discharging official duties.

158 S.W.3d 470, 473 (Tex. Crim. App. 2005). And based on these elements, the *Hall* court concluded that misdemeanor assault is a lesser-included offense of assault of a public servant. *See id.* Accordingly, we conclude that appellant has satisfied the first step. *See id.*

### 2. Step 2

With regard to the second step, the *Hall* court emphasized that "there must be some evidence from which a rational jury could acquit appellant of assault on a public servant while convicting him of the lesser-included offense of misdemeanor assault." *Id.* (citing *Bignall*, 887 S.W.2d at 23). The *Hall* court further noted that: "In making this decision, the court evaluates the evidence in the context of the entire record, but does not consider whether the evidence is credible, controverted, or in conflict with other evidence." *Id.* (citing *Havard v. State*, 800 S.W.2d 195, 216 (Tex. Crim. App. 1990) (op. on reh'g)).

In this case, we must determine whether a rational jury could find appellant guilty of only misdemeanor assault, not assault of a public servant. "If there is affirmative evidence in the record that negates one of the four additional elements of assault on a public servant, yet admits the underlying assault, appellant would be entitled to a lesser-included charge of misdemeanor assault." *Id.* at 474. As stated earlier, the only element of assault of a public servant that appellant claims that he has affirmatively negated is the element addressing whether corrections officers lawfully

discharged their official duties. Specifically, appellant asserts that his own testimony and the testimony of other inmates show that Assistant Warden Brewer approached appellant aggressively and was the first to initiate contact. Appellant also asserts that his witnesses described officers choking, grabbing, and shoving appellant in the shoulder and neck area without any provocation from appellant. Based on this testimony, appellant argues that he affirmatively negated that corrections officers lawfully discharged their official duties. We disagree.

In analyzing an officer's "lawful discharge" of official duties, the Texas Court of Criminal Appeals has stated that "as long as the officer was acting within his capacity as a peace officer, he was acting within the lawful discharge of his official duties." *Id.* More specifically, courts have looked at the details of the encounter, such as whether the police officer was in uniform, on duty, and whether he was on regular patrol at the time of the assault, in analyzing whether the officer lawfully discharged official duties. *Id.* Ostensibly, the "lawful discharge" of an officer's official duties "means that the public servant is not criminally or tortiously abusing his office as a public servant by acts of, for example, 'official oppression' or 'violations of the civil rights of a person in custody' or the use of unlawful, unjustified force." *Id.* at 474-75.

Relying heavily on a note from the jury requesting a definition of "lawful force," appellant contends that officers unlawfully discharged their official duties by using unlawful, unjustified force in restraining him. Section 9.53 of the penal code provides the following guidelines for when a correctional officer's use of force is considered "lawful":

> An officer or employee of a correctional facility is justified in using force against a person in custody when and to the degree the officer or employee reasonably believes the force is necessary to maintain the security of the correctional facility, the safety or security of other persons in custody or employed by the correctional facility, or his own safety or security.

TEX. PENAL CODE ANN. § 9.53 (West 2011). "[I]f a correctional officer's use of force falls within the above definition, he is lawfully discharging his official duties, and, if assaulted at this time, the actor is guilty of assault of a public servant rather than mere misdemeanor assault." *Hall*, 158 S.W.3d at 475.

Here, the record does not contain some evidence, from any source, demonstrating that officers were criminally or tortiously abusing their status as public servants at the time of the assaults. In fact, appellant does not direct us to relevant authority demonstrating that the officers in this case criminally or tortiously abused their status as public servants at the time of the assaults. At trial, appellant admitted that he repeatedly refused to obey Officer Reinke's orders to sit down. The record reflects that Assistant Warden Brewer entered the chow hall and tried to diffuse the situation. Though there is some dispute in the record as to Assistant Warden Brewer's actions towards appellant, even if we were to accept appellant's version of the facts as true, Assistant Warden Brewer merely touched appellant as he ordered him to sit down. Furthermore, it is undisputed that Officer Reinke and Assistant Warden Brewer were in their official uniforms and on duty supervising inmates at the Ferguson Unit on the day in question.

Based on our review of the record, neither Officer Reinke nor Assistant Warden Brewer's actions leading up to the assaults amount to an unlawful discharge of their official duties. We fail to see how merely touching an inmate while instructing him to sit down amounts to an unlawful discharge of a correctional officer's official duties. *See id.* at 475 (concluding that an officer was lawfully discharging his official duties when he shoved an inmate toward his cell after the inmate refused to follow an instruction to "move on"). We believe the record establishes that the officers' actions were necessary, within the context of section 9.53 of the Texas Penal Code, to preserve the safety of the officers and the inmates. *See* Tex. Penal Code Ann. § 9.53. Moreover, most of the testimony provided by appellant's witnesses regarding appellant's alleged beating transpired *after* appellant had assaulted both Assistant Warden Brewer and Officer Reinke. Like *Hall*, there is no record evidence in this case that officers "unjustifiably or maliciously hauled off and pushed or punched a quietly passing inmate who was minding his own business." *Id.* Appellant instigated this confrontation by refusing to obey legitimate orders by corrections officers and eventually punching corrections officers. *See id.*

Therefore, based on the foregoing, we conclude that there is no evidence that would support a rational conclusion that Assistant Warden Brewer and Officer Reinke were unlawfully discharging their official duties at the time appellant punched them. Accordingly, we cannot say that there is some evidence that would permit a rational jury to find that, if appellant is guilty, he is guilty only of misdemeanor assault. *See Cavazos*, 382 S.W.3d at 383; *Rice*, 333 S.W.3d at 145; *Hall*, 225 S.W.3d at 536. As such, we

conclude that: (1) appellant was not entitled to a lesser-included-offense instruction on misdemeanor assault; and (2) the trial court did not abuse its discretion in refusing to issue such an instruction. *See Cavazos*, 382 S.W.3d at 383; *see also Threadgill*, 146 S.W.3d at 666. We overrule appellant's first issue.

### III. APPELLANT'S JURY-INSTRUCTION REQUEST

In his second issue, appellant contends that the trial court committed reversible error by failing to provide the jury with his requested instruction on "unlawful conduct."

#### A. Applicable Law

In reviewing a jury-charge issue, an appellate court's first duty is to determine whether error exists in the jury charge. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). If error is found, the appellate court must analyze that error for harm. *Middleton v. State*, 125 S.W.3d 450, 453-54 (Tex. Crim. App. 2003). If an error was properly preserved by objection, reversal will be necessary if the error is not harmless. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). To obtain reversal for jury-charge error, appellant must have suffered actual harm and not just merely theoretical harm. *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012); *Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986).

#### B. Discussion

At the charge conference, appellant objected to the court's charge and requested that the jury be instructed on "unlawful conduct." Appellant tendered a proposed charge, which incorporated his definition of "unlawful conduct." The trial court

overruled appellant's objection, declined to issue appellant's proposed jury charge, and subsequently charged the jury. Thereafter, during deliberations, the jury submitted a note to the trial court requesting a definition for "lawful force." Appellant once again requested that the charge incorporate his instruction on "unlawful conduct," but the trial court declined to do so. Nevertheless, appellant admits on appeal that the "record fairly reflects that the trial court submitted Texas Penal Code Section 9.53 on a correctional officer's justification of force to the jury" (footnote omitted).

Assuming, without deciding, that it was error for the trial court to not issue appellant's instruction regarding "unlawful conduct," we do not believe that the purported error caused harm to appellant. As we have already concluded, there is no evidence that would support a rational conclusion that Assistant Warden Brewer and Officer Reinke were unlawfully discharging their official duties at the time appellant punched them. And because there is no evidence that correctional officers acted unlawfully at the time of the assaults, we cannot say that appellant was harmed by the absence of his instruction on "unlawful conduct" in the jury charge. *See Sanchez*, 376 S.W.3d at 775 (stating that the presence of overwhelming evidence may be considered when assessing jury-charge error) (citing *Harris v. State*, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989)); *Almanza*, 686 S.W.2d at 171 (noting that harm caused by jury-charge error must be considered "in light of the entire jury charge, the state of the evidence, including the contested issues and the weight of probative evidence, the arguments of counsel and any other relevant information revealed by the record of the trial as a whole"); *see also Remsburg v. State*, 219 S.W.3d 541, 545 (Tex. App.—Texarkana 2007, pet.

ref'd) ("Conversely, the defendant is not entitled to an instruction that is not raised by the evidence.").   Accordingly, we overrule appellant's second issue.

## IV.   CONCLUSION

Having overruled both of appellant's issues, we affirm the judgments of the trial court.



AL SCOGGINS
Justice


Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed November 14, 2013
Do not publish
[CR25]