ACCEPTED
12-14-00255-CR
TWELFTH COURT OF APPEALS
TYLER, TEXAS
2/19/2015 9:27:54 PM
CATHY LUSK
CLERK

**12-14-00255-CR**

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
2/19/2015 9:27:54 PM
CATHY S. LUSK
Clerk

IN THE TWELFTH COURT OF APPEALS
TYLER, TEXAS

# DENNIS MONTRELL BENDY

**Appellant,**

**v.**

# THE STATE OF TEXAS

**Appellee**

On Appeal from the 114th District Court of Smith County, Texas
Trial Cause No. 241-1575-13

## ORAL ARGUMENT NOT REQUESTED

Austin Reeve Jackson
Texas Bar No. 24046139
112 East Line, Suite 310
Tyler, TX 75702
Telephone: (903) 595-6070
Facsimile:  (866) 387-0152

## IDENTITY OF PARTIES AND COUNSEL

**Attorney for Appellant**

Appellate Counsel:
Austin Reeve Jackson
112 East Line, Suite 310
Tyler, TX 75702

Trial Counsel:
John Rex Thompson
321 West Houston St.
Tyler, TX 75702

Don Davidson
PO Box 1105
Tyler, TX 75710

**Attorney for the State on Appeal**

Michael J. West
Assistant District Attorney, Smith County
4th Floor, Courthouse
100 North Broadway
Tyler, TX 75702

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ................................................................ ii

TABLE OF CONTENTS ........................................................................................ iii

INDEX OF AUTHORITIES ..................................................................................... v

STATEMENT OF THE CASE ................................................................................. 2

ISSUES PRESENTED ............................................................................................ 2

STATEMENT OF FACTS ...................................................................................... 2

SUMMARY OF THE ARGUMENT ........................................................................ 5

ARGUMENT .......................................................................................................... 5

      Standard of Review For Legal Sufficiency ........................................................ 6

      Applying this Standard to Accomplice Witness Testimony ................................ 6

I.    ABSENT ACCOMPLICE WITNESS EVIDENCE, THE EVIDENCE IS LEGALLY INSUFFICIENT TO SUPPORT THE VERDICT ...................................................................................... 8

    The Evidence at Trial ....................................................................................... 8
      Kiara Cain ..................................................................................................... 9
      Madeline Wallace .......................................................................................... 9
      Rakheem Goldstein ........................................................................................ 9
      Katyron Barrett ............................................................................................. 10
      Stephan Whitemon ........................................................................................ 11
      Other Evidence .............................................................................................. 11
      Non-Accomplice Evidence ............................................................................ 11

II.   THE TRIAL COURT ERRED IN DENYING A REQUESTED JURY INSTRUCTION ON THE LESSER-INCLUDED OFFENSE OF MANSLAUGHTER ...................................................................... 15

    Standard of Review ........................................................................................ 15

    A. The Offense Requested was a Lesser-Included Offense of the Offense Charged ..................................................................................................... 17

# TABLE OF CONTENTS (CON'T)

B. Evidence in the Record Supported a Conviction of Manslaughter............... 17

C. Mr. Bendy was Harmed by the Denial of the Lesser-Included..................... 20

CONCLUSION AND PRAYER ................................................................................ 22

CERTIFICATE OF SERVICE .................................................................................. 22

CERTIFICATE OF COMPLIANCE ......................................................................... 22

# INDEX OF AUTHORITIES

## TEXAS COURT OF CRIMINAL APPEALS:

*Abdnor v. State,*
   871 S.W.2d 726 (Tex.Crim.App. 1994) ........................................................ 15, 20, 21

*Almanza v. State,*
   686 S.W.2d 157 (Tex.Crim.App. 1985) ........................................................ 21

*Arline v. State,*
   721 S.W.2d 348 (Tex.Crim.App. 1986) ........................................................ 20

*Bignall v. State,*
   887 S.W.2d 21 (Tex.Crim.App. 1994) ........................................................ 17, 18

*Cavazos v. State,*
   382 S.W.3d 377 (Tex.Crim.App. 2012) ........................................................ 17

*Curry v. State,*
   30 S.W.3d 394 (Tex.Crim.App. 2000) ........................................................ 6

*Dewberry v. State,*
   4 S.W.3d 735 (Tex.Crim.App. 1999) ........................................................ 6

*Druery v. State,*
   225 S.W.3d 491 (Tex.Crim.App. 2007) ........................................................ 12

*Feldman v. State,*
   71 S.W.3d 738 (Tex.Crim.App. 2002) ........................................................ 16

*Fisher v. State,*
   851 S.W.2d 298 (Tex.Crim.App. 1993) ........................................................ 6

*Goad v. State,*
   354 S.W.3d 443 (Tex.Crim.App. 2011) ........................................................ 19 n.2

*Gosch v. State,*
   829 S.W.2d 775 (Tex.Crim.App. 1991) ........................................................ 7

## TEXAS COURT OF CRIMINAL APPEALS (CON'T):

*Hall v. State,*
225 S.W.3d 524 (Tex.Crim.App. 2007) ....................................................... 16, 17

*Harris v. State,*
738 S.W.2d 207 (Tex.Crim.App. 1986) ....................................................... 14

*Jimenez v. State,*
32 S.W.3d 233 (Tex.Crim.App. 2000) ....................................................... 15, 16

*Jones v. State,*
984 S.W.2d 254 (Tex.Crim.App. 1998) ....................................................... 19 n.2

*Joubert v. State,*
235 S.W.3d 729 (Tex.Crim.App. 2007) ....................................................... 13

*King v. State,*
895 S.W.2d 701 (Tex.Crim.App. 1995) ....................................................... 6

*Masterson v. State,*
155 S.W.3d 167 (Tex.Crim.App. 2005) ....................................................... 20, 21

*Matson v. State,*
819 S.W.2d 839 (Tex.Crim.App. 1991) ....................................................... 6

*Medina v. State,*
7 S.W.3d 633 (Tex.Crim.App. 1999) ....................................................... 19

*Moore v. State,*
969 S.W.2d 4 (Tex.Crim.App. 1998) ....................................................... 15, 16, 17

*Narvaiz v. State,*
840 S.W.2d 415 (Tex.Crim.App. 1992) ....................................................... 6

*Paulus v. State,*
633 S.W.2d 827 (Tex.Crim.App. 1981) ....................................................... 7, 14

*Rouseau v. State,*
855 S.W.2d 666 (Tex.Crim.App. 1993) ....................................................... 16

## TEXAS COURT OF CRIMINAL APPEALS (CON'T):

*Salina v. State,*
  163 S.W.3d 734 (Tex.Crim.App. 2005) ..................................................... 16

*Schroeder v. State,*
  123 S.W.3d 398 (Tex.Crim.App. 2003) ..................................................... 17

*Smith v. State,*
  332 S.W.3d 425 (Tex.Crim.App. 2011) ..................................................... 7, 8, 12

*Solomon v. State,*
  49 S.W.3d 356 (Tex.Crim.App. 2001) ....................................................... 7

*Trevino v. State,*
  991 S.W.2d 849 (Tex.Crim.App. 1999) ...................................................... 7

*Wesbrook v. State,*
  29 S.W.3d 103 (Tex.Crim.App. 2000) ........................................................ 6

## TEXAS COURTS OF APPEAL:

*Chamberlin v. State,*
  704 S.W.2d 801 (Tex.App.—Dallas 1985) .................................................. 21

*Gaston v. State,*
  324 S.W.3d 905 (Tex.App.—Houston [14th Dist.] 2011)............................ 13, 14

*Lee v. State,*
  29 S.W.3d 570 (Tex.App.—Dallas 2000) ................................................... 7

*Nolley v. State,*
  5 S.W.3d 850 (Tex.App.—Houston [14th Dist.] 1999)................................ 13

*Remsburg v. State,*
  219 S.W.3d 541 (Tex.App.—Texarkana 2007)............................................ 16, 20, 21

*Robinson v. State,*
  945 S.W.2d 336 (Tex.App.—Austin 1997) ................................................. 19

## STATUTES:

TEX. CODE CRIM. PROC. art. 38.14 ................................................................ 7, 8

TEX. PEN. CODE § 6.03 ................................................................ 18, 19

TEX. PEN. CODE § 12.33 ................................................................ 21

TEX. PEN. CODE § 19.02 ................................................................ 17, 20

TEX. PEN. CODE § 19.04 ................................................................ 19, 20

**12-14-00255-CR**

IN THE TWELFTH COURT OF APPEALS
TYLER, TEXAS

**DENNIS MONTRELL BENDY**

**Appellant,**

**v.**

**THE STATE OF TEXAS**

**Appellee**

On Appeal from the 114th District Court of Smith County, Texas
Trial Cause No. 241-1575-13

**TO THE HONORABLE JUSTICES OF THE COURT:**

Comes now, Dennis Bendy, by and through his attorney of record, Austin Reeve Jackson, and files this his brief pursuant to the Texas Rules of Appellate Procedure, and would show the Court as follows:

## STATEMENT OF THE CASE

Dennis Bendy seeks to appeal his conviction and sentence for the offense of murder. (I CR 211). In November of 2013, Mr. Bendy was indicted for this offense in the 241st District Court of Smith County, Texas. (I CR 1). To this charge he entered a plea of "not guilty" and a jury trial was held in August of last year. (I CR 211). After being convicted, Mr. Bendy was sentenced by the trail court to serve a term of life confinement. (*Id*.). Sentence was pronounced on 28 August 2014 and notice of appeal then timely filed. (I CR 211, 215).

## ISSUES PRESENTED

**I. ABSENT ACCOMPLICE WITNESS EVIDENCE, THE EVIDENCE IS LEGALLY INSUFFICIENT TO SUPPORT THE VERDICT.**

**II. THE TRIAL COURT ERRED IN DENYING A REQUESTED JURY INSTRUCTION ON THE LESSER-INCLUDED OFFENSE OF MANSLAUGHTER.**

## STATEMENT OF THE FACTS

On the evening of 30 July 2013, a tragic series of events resulted in the death of a young woman who was enjoying time at the park with her son. (XI RR 128-29). Ms. Brianna Young, her son, and some of her friends were at P.T. Cole park in Tyler that evening along with a young man named Ke'Avier Wilson-Hurd or "K.J." (XI RR 131-32). K.J., who appeared nervous, displayed a gun to the group. (XI RR 135). Shortly thereafter, a white car was seen twice circling the park and

2

the parking nearby. (XI RR 136-37). Almost immediately shots began to be fired from both the car and by a bathroom in the park. (XI RR 137-38). Seeing that her son was in the area of the car from which shots were being fired, Ms. Young ran after him and was hit by two bullets. (XI RR 140). She died shortly after being shot. (*Id*.).

Investigating officers were unable to find anyone at the park who could identify the shooters. (XI RR 77-175; XVII RR 90). However, as they began to piece together what little they could determine, law enforcement was led to Rakheem Goldstein. Ultimately, Mr. Goldstein confessed to having been involved in the shooting and it was primarily from his testimony that the State built a case against Appellant, Mr. Dennis Bendy.

At trial, Mr. Goldstein testified that he and Mr. Bendy were friends and on the day of the shooting Mr. Bendy complained to him that he had been shot at by K.J. (XII RR 131, 140). This shooting, he stated, was motivated at least in part by gang-related issues. (XII RR 103-11). Specifically, according to Mr. Goldstein, K.J. was known for overtly and proudly engaging in behavior that showed disrespect to the gang of which he and Mr. Bendy were members. (XII RR 110-11, 113).

In response, Mr. Goldstein claimed that Mr. Bendy expressed a desire to "retaliate," although he was not sure what form that retaliation would take. (XII RR

140).  In preparation for that retaliation Mr. Goldstein and Mr. Bendy, who were at some point joined by Elisha Williams, obtained multiple guns.  (XII RR 147, 149).  They also switched cars by trading Mr. Bendy's vehicle in which they had been riding for a car belonging to Ms. Madeline Wallace, Mr. Goldstein's girlfriend.  (XII RR 153-54).  This exchange was done at a local gas station and recorded on the station's security cameras.  (XII RR 157).

Soon after switching cars, the group learns that K.J. is nearby in P.T. Cole Park.  (XII RR 163).  When learning of this information, Mr. Goldstein claimed that Mr. Bendy announced he was "going to get that n----r" and the three drove to the park.  (XII RR 163, 164).  After arriving at the park, Mr. Goldstein explained, "Bendy came up with a plan that he was going to let Elisha off on the other side [of the park] and come from that way [so that if K.J.] run that way, he could shoot him."  (XII RR 166-67).  Their white car then circled the park.  (XII RR 169).

After circling back around Mr. Bendy, according to Mr. Goldstein, stopped the car and then "jumped out" and started shooting.  (XII RR 170).  After firing several rounds they fled the area, took the guns to some associates to dispose of them, and switched back their car with Ms. Wallace.  (XI RR 34, 38-39; XII RR 141, 149; XIII RR 206).

Built primarily on the testimony of Mr. Goldstein and other potential co-defendants or co-conspirators, the State prosecuted Mr. Bendy for the murder of

4

Ms. Young. (I CR 1). To this charge he entered a plea of "not guilty" and proceeded to trial by jury. (I CR 211). Despite an overall lack of evidence corroborating the testimony of several accomplice witnesses, the jury nonetheless convicted Mr. Bendy of the charged offense. (*Id*.). Sentence was pronounced on 28 August 2014 and notice of appeal then timely filed. (I CR 211, 215).

## SUMMARY OF THE ARGUMENT

Where the State's case rests largely on the testimony of accomplice witnesses the State must develop other evidence tending to connect the defendant to the offense charged and which also substantiates the testimony of the accomplice-witness. Where the record before the Court, even viewed in the light most favorable to the verdict, shows that the State failed to produce such evidence, the evidence is legally insufficient to support a conviction and the underlying judgment must be reversed.

Additionally, because manslaughter is a lesser-included offense of the charged offense of murder, and because there was some evidence supporting a potential finding by the jury that Mr. Bendy was guilty only of the lesser offense, the trial court erred by refusing his timely request for a jury instruction on the lesser-included offense.

5

# ARGUMENT

Standard of Review for Legal Sufficiency

Whether evidence is legally sufficient is a question of law reviewed in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex.Crim.App. 2000); *Matson v. State*, 819 S.W.2d 839, 846 (Tex.Crim.App. 1991). The issue before the Court is whether a rational trier of fact could have found all the elements of the offense beyond a reasonable doubt. *Curry v. State*, 30 S.W.3d 394, 406 (Tex.Crim.App. 2000). When undertaking this review the Court will not reweigh or resolve conflicts in the evidence. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App. 1999). Any inconsistencies that may be present are resolved in favor of the verdict. *Curry*, 30 S.W.3d at 406. However, "if, based on all the evidence, a reasonably minded jury must necessarily entertain a reasonable doubt of the defendant's guilt, due process requires that [the Court] reverse and order a judgment of acquittal." *Fisher v. State*, 851 S.W.2d 298, 302 (Tex.Crim.App. 1993) (*quoting Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex.Crim.App. 1992). This standard applies to both direct and circumstantial evidence. *King v. State*, 895 S.W.2d 701, 703 (Tex.Crim.App. 1995).

Applying this Standard to Accomplice Witness Testimony

Because the State built the instant case in large part on the testimony of accomplice-witnesses, the Court must consider that this conviction cannot be upheld

6

upon the basis of their testimony unless that testimony is corroborated by "other evidence tending to connect the defendant with the offense committed." TEX. CODE CRIM. PROC. art. 38.14; *see also Paulus v. State*, 633 S.W.2d 827, 843 (Tex.Crim.App. 1981) (the testimony of an accomplice witness should be carefully scrutinized as it is evidence form a corrupt source).

In reviewing the record for corroboration, the Court eliminates the accomplice witness testimony and looks to determine whether there is any other evidence that tends to connect the defendant with the commission of the crime. *Solomon v. State*, 49 S.W.3d 356, 361 (Tex.Crim.App. 2001); TEX. CODE CRIM. PROC. art. 38.14. Corroborating evidence may be direct or circumstantial and need not, by itself, establish the defendant's guilt. *Id*.; *Gosch v. State*, 829 S.W.2d 775, 777 (Tex.Crim.App. 1991). Rather, corroboration is sufficient if there is any evidence that confirms a "mere detail" of the offense even if it does not independently establish the elements of that offense. *Lee v. State*, 29 S.W.3d 570, 577 (Tex.App.—Dallas 2000, no pet.). This may include "apparently insignificant circumstances." *Trevino v. State*, 991 S.W.2d 849, 852 (Tex.Crim.App. 1999). Finally, the Court will defer to the view of the evidence chosen by the jury and will not independently construe non-accomplice evidence. *Smith v. State*, 332 S.W.3d 425, 442 (Tex.Crim.App. 2011).

**I. ABSENT ACCOMPLICE WITNESS EVIDENCE, THE EVIDENCE IS LEGALLY INSUFFICIENT TO SUPPORT THE VERDICT.**

At trial, the only evidence directly linking Mr. Bendy to the commission of the underlying offense came from those who participated in the offense to varying degrees before, during, or immediately after it occurred. *See Smith*, 332 S.W.3d at 439 (defining accomplice witness). Therefore, the State was required to develop some non-accomplice witness evidence that would support the inherently suspect testimony those witnesses gave. TEX. CODE CRIM. PROC. art. 38.14. In this case, even considering what Appellant must concede is the generally liberal definition of what constitutes sufficient non-accomplice evidence, the State failed to meet that burden.

The Evidence at Trial

Recognizing their obligation to produce no-accomplice evidence, the State argued at trial that their burden had been met by a gas station video, phone records, and the testimony of Madeline Wallace, Kiara Cane, and Katyron Barrett. (XIX RR 32). However, even reviewed in the light most favorable to the verdict, this evidence is insufficient to corroborate the accomplice witness testimony. To understand why this is the case, a more detailed recitation of the evidence at trial is helpful:

### Kiara Cain

Ms. Cain testified that on the night of the shooting she and Madeline Wallace met Mr. Bendy and Rakheem Goldstein for the purpose of trading cars. (X RR 154). This exchange took place at a Food Fast in Tyler and was recorded on the service station video cameras. (XI RR 23). According to Ms. Cain, Mr. Bendy drove Ms. Wallace's car from the scene with Mr. Goldstein as his passenger. (X RR 155, 168). Later that evening, shortly after she had heard that the shooting had occurred, Ms. Cain stated that Ms. Wallace left where the two of them were in Mr. Bendy's car and returned in her own vehicle. (X RR 162).

### Madeline Wallace

Ms. Wallace gave testimony similar to that of Ms. Cain and also described that on the day of the shooting she received a call from her boyfriend, Rakheem Goldstein, who asked to borrow her car. (XI RR 18). Again, the transfer of vehicles was described as having occurred at a local gas station and Mr. Bendy, whose car she took, was seen driving away in Ms. Wallace's vehicle. (XI RR 23). Later that evening Ms. Wallace stated that Mr. Bendy called her and arraigned to switch the cars back. (XI RR 34, 38-39).

### Rakheem Goldstein

According to Mr. Goldstein, he meet with Mr. Bendy on the day of the shooting and learned that Mr. Bendy was upset because he early had been shot at

by Ke'avier Hurd, also known as "K.J.," and he wanted to "retaliate." (XII RR 131, 140). As a result, he and Mr. Goldstein arranged to switch cars with Ms. Wallace and head to Cole Park where K.J. had been seen. (XII RR 141, 160-65). On the way there, and after being joined by Elisha Williams, they went by the home of an associate referred to as "Slick," "Stick," or "Sticky," who provided them with guns. (XII RR 141, 149).

Once at the park Mr. "Bendy came up with a plan" to drop Mr. Williams off on one side of the park while he and Mr. Goldstein approached in the car from the opposite side. (XII RR 166). After dropping of Mr. Williams, Mr. Goldstein claimed that Mr. Bendy started shooting and Mr. Williams followed suit. (XII RR 170). The two then fled and asked another group of guys to dispose of the guns. (XIII RR 15).

Katyron Barrett

Mr. Barrett was the person to whom the guns were given after the shooting for disposal. (XIII RR 206). Mr. Barrett testified that the guns were given to him by Mr. Goldstein while Mr. Bendy remained in the vehicle in which they had arrived. (XIII RR 210). Ultimately, Mr. Barrett assisted law enforcement in finding the guns he had helped hide. (XIV RR 24).

<u>Stephan Whitemon</u>

Mr. Whitemon, also referred to as "Slick," "Stick," or "Sticky," helped Mr. Williams dispose of the gun he allegedly used in the shooting. (XVI RR 75-76). Prior to that, Mr. Whitemon announced at trial, to the surprise of both the State and the defense, that he had provided Mr. Bendy and Mr. Goldstein with the AK-47 Mr. Goldstein had claimed to have been carrying during the shooting. (XVI RR 77, 211). All of Mr. Whitemon's testimony came only after he had been granted immunity for the same. (XVI RR 67-70).

<u>Other Evidence</u>

Importantly, the lead detective in this case conceded that there was no independent evidence placing Mr. Bendy at the park at the time of the shooting that could confirm the testimony of the codefendants. (XVII RR 90). Moreover, none of the witnesses who were at the park at the time of the shooting could identify Mr. Bendy as having been present. (XI RR 77-175). Additionally, DNA testing of samples collected from the guns recovered and alleged to have been used in this incident, specifically *excluded* Mr. Bendy as having been a contributor of the DNA found on the weapons. (XVII RR 168-87).

<u>Non-Accomplice Evidence</u>

As noted, at trial the State argued that the accomplice witness evidence was corroborated, in part, by the testimony of Madeline Wallace, Kiara Cane, and

Katyron Barrett. (XIX RR 32). However, these witness are not non-accomplice witness as they aided the commission of the alleged crime both before and after it occurred. *See Smith*, 332 S.W.3d at 439. Specifically, Madeline Wallace and Kiara Cane, if their version of events is believed, facilitated the use of a vehicle that would be unknown to the intended victim of what was to be effectively a drive-by shooting and one that would not be immediately connected to Mr. Bendy. (XII RR 153-54). Further, Ms. Wallace then helped to relieve Mr. Goldstein and Mr. Bendy of the vehicle that witnesses were claiming to have seen in relation to a shooting she then knew had occurred. (XI RR 34, 38-39).

Mr. Barrett's testimony is even more suspect as he, at the request of Mr. Goldstein, helped to hide from law enforcement firearms that were the central pieces of evidence in the case. (XIII RR 210); *but see Druery v. State*, 225 S.W.3d 491, 500 (Tex.Crim.App. 2007) (holding that similar behavior assisting in the secreting of evidence after a murder does not make a person an accomplice as a matter of law). Thus, Appellant would urge the Court to consider the testimony of these three witnesses as accomplice witness testimony and not consider it for purposes of corroboration. *See Smith*, 332 S.W.3d at 439 (accomplice witness can be one who helps after the fact).

At best then, other than the gas station video shortly before the incident that does show Mr. Bendy and Mr. Goldstein exchanging cars with Ms. Wallace the

12

State can rely only on a series of phone calls between Mr. Bendy and others at or near the time of the shooting which do, admittedly, verify some small portion of some of the testimony given by the accomplice witnesses and which place Mr. Bendy, or at least his phone, somewhere closer to the general area of the park at the time of the shooting than he was to being in the city of Dallas; probably within two miles. (XII RR 212; XIV RR 61-63; XV RR 37).

However, when reviewing the phone evidence, which Appellant would argue constitutes just about the entirety of the non-accomplice witness evidence the State produced at trial, it is important to bear in mind that that evidence in the light most favorable to the State shows only that Mr. Bendy may have been aware of the offense, in the general area in which the offense occurred, and may have had contact with others involved in committing the offense. Such evidence does not show though that he in any way participated in the commission of the offense. *See, e.g., Gaston v. State*, 324 S.W.3d 905, 909 (Tex.App.—Houston [14th Dist.] 2011, pet. ref'd) ("We recognize that testimony placing appellant in the company of the accomplice near the time of the offense may be considered as corroborating evidence, but evidence of guilt by association will not satisfy article 38.14 by itself." (*citing Nolley v. State*, 5 S.W.3d 850, 854-55 (Tex.App.—Houston [14th Dist.] 1999, no pet.)); *but see Joubert v. State*, 235 S.W.3d 729, 731 (Tex.Crim.App. 2007) (holding that the evidence need not establish the nature of the defendant's

involvement or whether he acted as a principal or party).  Moreover, the law is well established that "mere presence of the accused in company with the accomplice witness shortly before or after the time of the offense is not, in itself, sufficient corroboration." *See Harris v. State*, 738 S.W.2d 207, 218 (Tex.Crim.App. 1986)

Consequently, because the record before Court, when considered outside that evidence that constituted accomplice witnesses evidence, establishes, at best, only an abstract connection between Mr. Bendy and the shooting that took place in Cole Park, the Court must reverse the judgment and render a judgment of acquittal. *Gaston*, 324 S.W.2d at 909 ("Nevertheless, the corroboration must "tend to connect" the accused to the commission of the offense; if it does no more than point the finger of suspicion at him then we must reverse." (*citing Paulus*, 633 S.W.2d at 844 (Tex.Crim.App. 1981)).

## II. THE TRIAL COURT ERRED IN DENYING A REQUESTED JURY INSTRUCTION ON THE LESSER-INCLUDED OFFENSE OF MANSLAUGHTER.

Prior to submitting the trial court's charge on guilt / innocence, Mr. Bendy timely requested an instruction on the lesser-included offense of manslaughter. (I CR 164, 170; XVIII RR 133).[1] The trial court denied this request. (XVIII RR 138). When it denied Appellant's request, the trial court committed error that requires the reversal of Mr. Bendy's conviction and the remand of this case for a new trial.

Standard of Review

When an appellant complains on appeal that he was erroneously denied an instruction on a lesser-included offense the reviewing court first determines whether the appellant was entitled to such an instruction. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex.Crim.App. 1994). If the requested instruction should have been given the appellate court then looks to determine whether that error was preserved at trial. *Jimenez v. State*, 32 S.W.3d 233, 239 (Tex.Crim.App. 2000). If the instruction was timely requested an appellant must only show "some harm" resulted by its

---

[1] At the same time the request was made for a lesser-included instruction as to manslaughter, Mr. Bendy made a somewhat confusing concurrent request for an instruction as to sudden passion. (XVIII RR 133-34). Appellant concedes that a sudden passion instruction is a punishment issue and is inappropriate for inclusion in the charge on guilt. *See Moore v. State*, 969 S.W.2d 4, 8 n.1 (Tex.Crim.App. 1998) (discussing legislature's movement of sudden passion issue from guilt phase of trial to punishment phase). However, the written proposed charge offered by Mr. Bendy during the charge conference makes clear that a traditional or standard manslaughter instruction was also requested. (I CR 170).

denial. *Id*. at 237; *see also Remsburg v. State*, 219 S.W.3d 541, 547 (Tex.App.—Texarkana 2007, pet. ref'd). Thus, a trial court's judgment will be reversed if some harm is shown and the appellate court cannot be satisfied beyond a reasonable doubt that the error did not contribute to the conviction or punishment. *Remsburg*, 219 S.W.3d at 547.

An appellate court's resolution of a two-step analysis determines whether a defendant is entitled to an instruction regarding a lesser-included offense. *Hall v. State*, 225 S.W.3d 524, 528 (Tex.Crim.App. 2007); *Feldman v. State*, 71 S.W.3d 738, 750 (Tex.Crim.App. 2002); *Rousseau v. State*, 855 S.W.2d 666, 672-73 (Tex.Crim.App. 1993). The first step is to find whether the elements of the proposed lesser-included offense are "established by proof of the same or less than all the facts required to establish the commission of the offense charged." TEX. CODE CRIM. PROC. ART. 37.09(1) (Vernon 2007). This is a question of law resolved by comparing the elements of the offense for which the defendant was indicted with the elements of the claimed lesser included. *Hall*, 225 S.W.3d at 535-36.

The second step is to review the record for some evidence that would allow the finder of fact to find that, if the defendant is guilty, he is guilty only of the lesser offense. *Id*. at 536; *Salina v. State*, 163 S.W.3d 734, 741 (Tex.Crim.App. 2005); *Moore v. State*, 969 S.W.2d 4, 8 (Tex.Crim.App. 1998). The court should not consider whether such evidence is credible or controverted, but should look only to

16

whether there is more than a mere scintilla of evidence in support of the lesser-included offense. *Moore*, 969 S.W.2d at 8, *Hall* 225 S.W.3d at 536. If more than a mere scintilla of evidence is found the defendant is entitled to a lesser charge. *Bignall v. State*, 887 S.W.2d 21, 23-24 (Tex.Crim.App. 1994); *see also Hall*, 225 S.W.3d at 536.

A. The Offense Requested was a Lesser-Included of the Offense Charged.

As alleged, Mr. Bendy was charged with committing the offense of murder by intentionally or knowingly causing the death of another and committing an act clearly dangerous to human life that caused the death of another during the act's commission or in the immediate flight therefrom. (I CR 1); Tex. Pen. Code § 19.02(b)(1)-(3). The offense of manslaughter, defined as recklessly causing the death of another, is "established by proof of the same or less than all the facts required to establish the commission of the offense charged." Tex. Code Crim. Proc. Art. 37.09(1) (defining lesser). As such, manslaughter is a recognized lesser-included offense of murder. *Moore*, 969 S.W.2d at 9; *see also Cavazos v. State*, 382 S.W.3d 377, 382 (Tex.Crim.App. 2012); *Schroeder v. State*, 123 S.W.3d 398, 400 (Tex.Crim.App. 2003).

B. Evidence in the Record Supported a Conviction of Manslaughter

Having established that manslaughter is a lesser-included offense of murder, the only relevant issue before the Court at this point is not whether the jury *would*

have convicted Mr. Bendy only of the lesser offense, but whether there is anything more than a mere scintilla of evidence supporting the conclusion that the jury *could* have done so. *Bignall*, 887 S.W.2d at 23-24.

That evidence is seen best in the testimony of Mr. Rakheem Goldstein. (XII RR 100-XIII RR 114). As Mr. Goldstein explained, there was not necessarily any premeditated intent to kill K.J. (XII RR 140, 152). Rather, having been shot at Mr. Bendy expressed a desire simply to "retaliate" which could, of course, mean making an attempt to simply frighten K.J. in the same reckless manner that he himself had been frightened. (XII RR 140). In fact, Mr. Goldstein testified that he didn't think an actual shooting to effect a murder was going to occur and conceded that there was no specific plan to "scare [K.J.], hurt him, [or] kill him." (XII RR 151-52, 170).

Further, once they arrived at the park Mr. Goldstein discussed with Mr. Bendy the dangers in shooting around a crowded area establishing that at that point a reasonable person would have been aware of a substantial risk to others. *See* TEX. PEN. CODE § 6.03 (defining "reckless *mens rea*).

> We're talking, you know. It was a lot of people at the park, you know, kids and stuff, you know what I'm saying? I was like, "Man, there's too many people at this park to be, you know, trying to just be shooting."

18

(XII RR 165). In response, Mr. Bendy assured Mr. Goldstein, "Man, I got aim. You know, I got this," from which the conclusion could be drawn that, aware of the risk, Mr. Bendy nonetheless chose to ignore it.[2] TEX. PEN. CODE § 6.03.

If the jury took this testimony as evidence that Mr. Bendy was aware of a substantial risk to others but disregarded it in a reckless manner by firing a firearm in a public park, they properly could have convicted him only of manslaughter. *See* TEX. PEN. CODE § 19.04 (manslaughter); *but see Medina v. State*, 7 S.W.3d 633, 639 (Tex.Crim.App. 1999) (holding that a defendant was not entitled to a lesser-included instruction on manslaughter where evidence showed that defendant fired into a crowd without the intent to kill any particular person); *Robinson v. State*, 945 S.W.2d 336, 342-43 (Tex.App.—Austin 1997, pet. ref'd) (holding that shooting between the defendant and intended victim earlier in the day, the defendant's "haste to procure an automatic rifle," and his "intentional firing" at an apartment negated a finding of manslaughter and supported the trial court's denial of that instruction in the jury charge). Consequently, the trial court erred by denying Appellant's timely request for an instruction on this issue.

---

[2] While this conversation also included comments implicating that Mr. Bendy intended to shoot or have one of the codefendants shoot K.J., again, because the issue is a question of whether there is some evidence supporting manslaughter, that the jury could disbelieve some portions of this conversation and disbelieve others still provides a basis from which to support a theoretical finding of only reckless conduct and manslaughter. *See Goad v. State*, 354 S.W.3d 443, 446-47 (Tex.Crim.App. 2011) (an appellate court may not consider the credibility of the evidence or whether it conflicts with other evidence or is controverted); *Jones v. State*, 984 S.W.2d 254, 258 (Tex.Crim.App. 1998) (jury is free to believe or disbelieve all or some part of any witness' testimony; a fact appellate courts must recognize when considering lesser-included offenses).

19

C.  Mr. Bendy was Harmed by the Denial of the Lesser-Included.

Mr. Bendy timely requested an instruction on the lesser-included offense of attempted theft, specifically:

> Now, if you find from the evidence beyond a reasonable doubt that on or about he 30th day of July, 2013, in Smith County, Texas, the defendant, Dennis Bendy, did then and there recklessly cause the death of an individual, namely Briana Raquel Young, by shooting Briana Raquel Young with a firearm, then you will find the defendant, Dennis Bendy, guilty of the lesser included offense of Manslaughter.

(XVIII RR 133; I CR 170).

Because he timely made such a request, the Court must determine whether "some harm" resulted from the denial of that request.  *Remsburg*, 219 S.W.3d at 547.  Regardless of degree, the presence of "*any* harm" is sufficient to require reversal.  *Abnor*, 871 S.W.2d at 732 (*quoting Arline v. State*, 721 S.W.2d 348, 351 (Tex.Crim.App. 1986) (emphasis in original).

> [T]he harm from denying a lesser offense instruction stems from the potential to place the jury in the dilemma of convicting for a greater offense in which the jury has reasonable doubt or releasing entirely from criminal liability a person the jury is convinced is a wrongdoer. The intervening lesser offense is an available compromise, giving the jury the ability to hold the wrongdoer accountable without having to find him guilty of the charged (greater) offense.

*Masterson v. State*, 155 S.W.3d 167, 171 (Tex.Crim.App. 2005).

In the instant case Mr. Bendy was charged with a first degree felony.  (I CR 1); TEX. PEN. CODE § 19.02(c).  Manslaughter, on the other hand, would have been a second degree felony.  TEX. PEN. CODE § 19.04(b).  As a result, had the jury con-

20

victed Mr. Bendy of only the lesser-included offense manslaughter, even if given the maximum sentence, he would have at most received twenty years' confinement; a sentence one-fifth of the one he actually received. *See Chamberlin v. State*, 704 S.W.2d 801, 804, n.1 (Tex.App.—Dallas 1985, no pet.) (finding harm where sentence imposed was greater than the sentencing range provided for the requested but denied lesser-included offense); TEX. PEN. CODE § 12.33 (punishment for second degree felony).

This case warrants consideration of the moral dilemma referenced by the Court of Criminal Appeals in *Masterson*. *Masterson*, 155 S.W.3d at 171. Here the jury was forced to either release without punishment or accountability a person who they believed attempted to commit some criminal offense, an offense which resulted in the death of an innocent young mother as she ran to cover her child, or to convict her of an offense about which they may have had reasonable doubt. (I CR 199) (verdict form). By depriving the jury of the opportunity to consider convicting Mr. Bendy only of the lesser-included offense the trial court stepped into the realm of fact-finder and deprived Mr. Bendy of his right to have factual disputes resolved by the jury. Such harm requires reversal. *Remsburg*, 219 S.W.3d at 547; *Abnor*, 871 S.W.2d at 732; *see also Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1985).

## CONCLUSION AND PRAYER

Wherefore, premises considered, Appellant respectfully prays that, because the record before the Court, when considered in light of the rules governing accomplice witness testimony, is legally insufficient to support his conviction, the judgment of the trial court be reversed and a judgment of acquittal be rendered.

Alternatively, because the trial court erroneously denied his timely requested instruction on the lesser-included offense of manslaughter, Appellant prays that the Court reverse the judgment of the trial court and remand the case for a new trial.

Respectfully submitted,

/s/ Austin Reeve Jackson
Texas Bar No. 24046139
112 East Line, Suite 310
Tyler, TX 75702
Telephone: (903) 595-6070
Facsimile: (866) 387-0152

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this brief was delivered to counsel for the State by efile / facsimile concurrently with its filing in the Court.

/s/Austin Reeve Jackson

## CERTIFICATE OF COMPLIANCE

I certify that this document complies with the requirements of Rule 9.4 and consists of 5,052 words.

/s/ Austin Reeve Jackson