# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-17-00645-CR

**Tam Ha Huynh, Appellant**

**v.**

**The State of Texas, Appellee**

FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
NO. CR2016-432, HONORABLE DON R. BURGESS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Tam Ha Huynh was charged with aggravated assault stemming from a motor-vehicle collision. *See* Tex. Penal Code § 22.02(a), (b) (listing elements of offense of aggravated assault and noting that offense is, in general, second-degree felony). At the end of the guilt-or-innocence phase, the jury found Huynh guilty of the charged offense. Huynh elected to have the district court assess his punishment. At the end of the punishment hearing, the district court sentenced Huynh to twelve years' imprisonment.[1] *See id.* § 12.33 (providing permissible punishment range for second-degree felony). In three issues on appeal, Huynh contends that the evidence is insufficient to support his conviction, that there was an error in the jury charge pertaining to causation, and that the required

---

[1] Originally, the indictment also alleged that Huynh was guilty of the offense of intoxication assault, and the jury found Huynh guilty of that offense as well. *See* Tex. Penal Code § 49.07 (setting out offense of intoxication assault and specifying that offense is, in general, third-degree felony). At the end of the punishment phase, Huynh argued that a conviction for both offenses was a Double Jeopardy violation, and the district court vacated Huynh's conviction for intoxication assault.

culpable mental state was impermissibly reduced in this case. We will affirm the district court's judgment of conviction.

## BACKGROUND

As set out above, Huynh was charged with aggravated assault. In particular, the indictment alleged that Huynh "intentionally, knowingly, or recklessly cause[d] serious bodily injury to Annona Melton by driving while intoxicated, by failing to control [his] motor vehicle, by failing to keep proper lookout, or by stopping his motor vehicle on Interstate 35 without headlights." Alternatively, the indictment alleged that Huynh "intentionally, knowingly, or recklessly cause[d] bodily injury to . . . Melton" in the manners listed above while "us[ing] or exhibit[ing] a deadly weapon, to-wit: a motor vehicle that, in the manner of its use or intended use, was capable of causing death or serious bodily injury." The alternative allegations stemmed from an incident occurring on a highway at night that resulted in two vehicle collisions. During the trial, the following witnesses were called to the stand: Thomas Rodriguez, who was driving an eighteen-wheeler on the night in question; Melton, who was injured on the night in question; Amber Henk, who was driving a car on the night in question; Officers John Mahoney and Cody Bianchi, who responded to the scene; and Kathy Erwin, who tested a sample of Huynh's blood collected on the night in question.[2]

In his testimony, Rodriguez explained that he is a truck driver, that he was driving his truck on the highway on the night in question, that he was driving "on a curve," that he saw

---

[2] During the testimony of some of the witnesses, they referred to various vehicles without specifying who was driving the vehicles. Because there is no dispute regarding who was in each of the vehicles, we will refer to the vehicles by their respective owners when summarizing the testimony presented at trial.

Huynh's "car stopped in the middle of the road blocking the center lane and a little bit of the right lane," that the car was oriented perpendicular to the flow of traffic, and that the car had no lights on. Next, Rodriguez related that he did not have much time to try to stop, that he tried but was unable to avoid hitting Huynh's car, that he struck the car on the back bumper, and that his truck "turned over" as a result of his efforts to avoid hitting the car. In addition, Rodriguez explained that when performing evasive maneuvers, he "saw some people on the shoulder."

Next, Henk was called to the stand and testified that she was driving on the highway on the night in question, that it was dark and raining, that she saw Huynh's car "parked in the fast lane" and tried to swerve, and that she crashed into the back of Huynh's car because there was not enough time to avoid the car. Further, Henk recalled that it happened very suddenly and that Huynh's car had no lights on. Additionally, Henk related that when her car stopped, she ran over to help Melton who "had gotten hurt."

During the trial, Melton also testified and related that she was driving on the highway on the night in question and that she saw Huynh's car "wrecked in the far left lane" and saw an "18-wheeler that was overturned in the ditch on the right side of the road." Additionally, Melton testified that she pulled over on the left side of the highway on "the shoulder," that she got out of her car to see if she could help, that Huynh's car did not have any lights on, that she called 911, that she ran to Huynh's car, and that she peered inside the car to see if anyone was inside. Next, Melton testified that she told the 911 operator to send an ambulance and that she saw Huynh with "his knees pulled up to his chest like he was trying to" but could not "get out" of the car. When describing Huynh's car, she said that the vehicle had been "crushed in from the front and from the back."

3

Further, Melton recalled that after seeing Huynh in his car, she was struck by another vehicle but did not remember the incident; on the contrary, Melton related that she only remembered "waking up on the asphalt and . . . realizing [that she] had been hit." Although Melton stated that she did not remember the incident, she also indicated in her testimony that Henk's car was the one that struck her. Moreover, Melton related that she was taken to the hospital by ambulance and that she had emergency surgery on her stomach because she was bleeding internally. Regarding her other injuries, Melton testified that part of her forehead had been removed, that her liver and one of her kidneys "were lacerated," that her shoulder was injured, that the skin from various parts of her body was removed, and that she had other injuries to her head, feet, and hip.

In addition to calling the individuals who had been involved in the collisions at issue, the State also called various law-enforcement personnel to the stand. In his testimony, Officer Mahoney stated that the portion of the highway at issue is "dangerous" because it is not well lit, because drivers go and up and down a hill in that area, because drivers have a "limited view" when driving over the hill, and because drivers are traveling at a high rate of speed. Further, Officer Mahoney explained that parking a car with its lights off at the point on the highway where the collisions occurred is "extremely dangerous." Moreover, Officer Mahoney testified that he arrived after the collisions occurred and that there were "citizens standing all around trying to help people who needed help."

Next, Officer Bianchi testified that he responded to the scene on the night in question. Officer Bianchi recalled that Huynh had been placed in an ambulance, that he went to talk with Huynh, that Huynh "had bloodshot eyes" that were "glassed over," that he could "smell an

4

intoxicating substance coming from [Huynh's] breath," that he followed Huynh to the hospital, that Huynh told the nurse that he had consumed a half bottle of wine and smoked marijuana, that Officer Bianchi asked Huynh to submit a voluntary blood sample at the hospital, and that Huynh agreed to provide the sample. Further, Officer Bianchi related that based on his observations, he believed that Huynh was intoxicated and had lost "his mental and physical faculties." Additionally, Officer Bianchi testified that it is extremely dangerous to park a car on a highway across the flow of traffic.

Finally, Erwin was called to the stand and testified that she is a forensic scientist, that she tested the blood sample collected from Huynh, that the testing revealed that the sample had a blood-alcohol concentration of 0.19, that the result was "almost two and a half times the legal limit," that Huynh was intoxicated on the night in question, and that smoking marijuana in addition to drinking would have increased the intoxicating effects.

During the trial, photographs of the scene were admitted into evidence. One of those photos showed extensive damage to the front of Henk's vehicle and showed that the front of her vehicle had crumpled as a result of a collision. Other photographs documented significant damage to the front and rear portions of Huynh's car and captured that Huynh's car ultimately ended up near a concrete barricade dividing the lanes of the highway.

Following the conclusion of the State's case in chief, Huynh moved for a directed verdict, but the district court denied the request. Consistent with the indictment, the jury charge in this case specified that Huynh was guilty of the offense of aggravated assault if he intentionally, knowingly, or recklessly caused serious bodily injury to Melton by driving while intoxicated, by failing to control his car, by failing to keep a proper lookout, or by stopping his car on the highway

5

with the car lights off or, alternatively, if he intentionally, knowingly, or recklessly caused bodily injury to Melton by one of the four manners previously listed and used or exhibited a deadly weapon during the assault. The verdict form instructed the jury to determine whether Huynh was guilty or not guilty of the offense of aggravated assault but did not ask the jury to indicate which of the two alternative aggravated-assault allegations formed the basis for its verdict. At the end of guilt-or-innocence phase, the jury found Huynh guilty of aggravated assault.

## DISCUSSION

### Sufficiency of the Evidence

In his first issue on appeal, Huynh argues that the district court erred by denying his motion for a directed verdict and that the evidence presented at trial is legally insufficient to support his conviction for aggravated assault.

Appellate courts "treat a point of error complaining about a trial court's failure to grant a motion for directed verdict as a challenge to the legal sufficiency of the evidence." *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996). Under a legal-sufficiency standard of review, appellate courts view the evidence in the light most favorable to the verdict and determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). When performing this review, an appellate court must bear in mind that it is the factfinder's duty to weigh the evidence, to resolve conflicts in the testimony, and to make "reasonable inferences from basic facts to ultimate facts." *Id.*; *see also* Tex. Code Crim. Proc. art. 36.13 (explaining that "jury is the exclusive judge of the facts"). Moreover, appellate courts must "determine whether the necessary inferences are reasonable based upon the

6

combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Furthermore, appellate courts presume that conflicting inferences were resolved in favor of the conviction and "defer to that determination." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In addition, courts must bear in mind that "direct and circumstantial evidence are treated equally" and that "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and "can be sufficient" on its own "to establish guilt." *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).

In reviewing the legal sufficiency of the evidence supporting a conviction, appellate courts consider "*all* evidence that the trier of fact was permitted to consider, regardless of whether it was rightly or wrongly admitted." *Demond v. State*, 452 S.W.3d 435, 445 (Tex. App.—Austin 2014, pet. ref'd) (emphasis added). The evidence is legally insufficient if "the record contains no evidence, or merely a 'modicum' of evidence, probative of an element of the offense" or if "the evidence conclusively establishes a reasonable doubt." *Kiffe*, 361 S.W.3d at 107 (quoting *Jackson*, 443 U.S. at 320). Furthermore, reviewing courts "measure the sufficiency of the evidence by the so-called hypothetically correct jury charge, one which accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *See DeLay v. State*, 465 S.W.3d 232, 244 n.48 (Tex. Crim. App. 2014).

Under the Penal Code, an individual commits the offense of assault if he "intentionally, knowingly, or recklessly causes bodily injury to another" and is guilty of aggravated

7

assault if he commits assault and "causes serious bodily injury to another" or "uses or exhibits a deadly weapon during the commission of the assault." Tex. Penal Code §§ 22.01(a)(1), .02(a). Moreover, the Penal Code defines "[d]eadly weapon" as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17)(B).

In his first issue, Huynh does not challenge the sufficiency of the evidence supporting a determination that Melton suffered bodily injury or serious bodily injury on the night in question. Instead, Huynh asserts that the evidence is insufficient to prove that he operated his vehicle "in a way to cause the injury." When presenting his sufficiency challenge, Huynh notes that the testimony from Rodriguez, Officer Bianchi, and Officer Mahoney revealed that none of those individuals saw the collision involving Melton, and Huynh emphasizes that Melton admitted in her testimony that she did not remember being struck by a car and stated that Huynh's vehicle was not the one that struck her. Moreover, Huynh asserts that no witness testified that they saw him driving or otherwise "operating his car," that no witness testified that he was in the driver's seat, and that no witness testified that his motor was running during the time in question. Further, Huynh points to a portion of Rodriguez's testimony in which he referred to Huynh's car as "stalled" and insists this testimony demonstrates that his car was "inoperable" and that he "could not have parked" the car "because he had no control over it." Similarly, Huynh highlights the testimony from Melton indicating that Huynh's car had been wrecked before Melton was injured and argues that her testimony described "a vehicle that [wa]s disabled," meaning that Huynh could not have parked the vehicle. Additionally, Huynh points to the testimony from Officer Mahoney and from Rodriguez suggesting that there were people out on the roadway and argues that those individuals would only have been out there "if there

8

had been something to draw them there, such as a car accident" occurring before Rodriguez's truck collided with Huynh's car. Along those same lines, Huynh urges that the evidence of damage to the front of his vehicle suggests that he was involved in "a prior wreck that left [his car] inoperable" because Rodriguez testified that he hit Huynh's back bumper.

In an alternative set of arguments, Huynh also urges that there is insufficient evidence to support a determination that he used or exhibited a deadly weapon during the assault. In particular, Huynh argues that Melton's injuries were caused by Henk's vehicle and that the State failed to show that his vehicle had any contact with Melton. Additionally, Huynh asserts that because there was no evidence that he was driving his car or stopped "his car in the road on his own volition," the State failed to "prove that he used or exhibited his own car."

Regarding Huynh's assertion that there was no evidence that he operated his car, we note that the testimony presented at trial demonstrated that Huynh's car was seen on the highway immediately before the first collision with Rodriguez and that Huynh was seen inside his vehicle right after that collision with Rodriguez's truck and right before Melton was injured. *See Kirsch v. State*, 357 S.W.3d 645, 650-51 (Tex. Crim. App. 2012) (explaining that although Penal Code does not define word "operate," for sufficiency reviews, person "'operates' a vehicle when 'the totality of the circumstances [ ] demonstrate that the defendant took action to affect the functioning of his vehicle in a manner that would enable the vehicle's use'" (quoting *Denton v. State*, 911 S.W.2d 388, 390 (Tex. Crim. App. 1995))); *see also Priego v. State*, 457 S.W.3d 565, 569 (Tex. App.—Texarkana 2015, pet. ref'd) (stating that term operating is interpreted broadly). In addition, no testimony was introduced indicating that anyone other than Huynh drove the vehicle on the night in question.

9

Accordingly, the jury could have reasonably inferred that Huynh drove the car on the night in question. *See Loera v. State*, 14 S.W.3d 464, 468 (Tex. App.—Dallas 2000, no pet.) (noting that "the trial court could reasonably infer appellant used a public road or street to reach his destination"); *see also Priego*, 457 S.W.3d at 570 (upholding conviction for driving while intoxicated, in part, because evidence showed that defendant was only person in control of car when she was found unconscious in parking lot).

In addition, Huynh's vehicle was initially observed stopped in a dangerous manner by being oriented perpendicular to oncoming traffic with its headlights off at night and in a poorly lit area. Furthermore, evidence presented during the trial demonstrated that a sample of Huynh's blood taken shortly after the various collisions revealed that Huynh had a blood-alcohol level that was well in excess of the legal limit, that Huynh admitted to drinking and consuming marijuana on the night in question, and that Huynh had bloodshot eyes and smelled like alcohol shortly after the collisions. Accordingly, the jury could have reasonably inferred that Huynh was intoxicated when driving his car. *See Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010) (explaining that evidence that would logically raise inference that individual is intoxicated includes, among other things, "erratic driving," "bloodshot eyes," and "any admissions by the defendant concerning what, when, and how much he had been drinking"); *Texas Dep't of Pub. Safety v. Gilfeather*, 293 S.W.3d 875, 880 (Tex. App.—Fort Worth 2009, no pet.) (noting that "[b]loodshot eyes" and "an odor of alcohol on a person's breath . . . are all classic symptoms of intoxication"); *see also* Tex. Penal Code § 49.04(a) (providing that person commits offense if he "is intoxicated while operating a motor vehicle in a public place").

10

Although Huynh suggests that there was evidence potentially indicating that he had been involved in a wreck prior to when Rodriguez crashed into the back of his car, no testimony was introduced during trial regarding a prior collision or specifying that wreckage from another collision was found at the scene. In addition, although Huynh highlights the portion of Rodriguez's testimony stating that he crashed into the back of Huynh's car, testimony and photographic evidence were presented at trial demonstrating that as a result of the collision with Rodriguez's truck, Huynh's car went from the far right side of the highway to the far left side by a cement barricade before Henk arrived at the scene. Accordingly, the jury could have reasonably inferred from the evidence that the damage to the front portion of Huynh's car occurred as a result of the collision with Rodriguez's truck or through an impact with the barricade when the car was shoved across the street. Moreover, as mentioned earlier, Henk testified that her car collided with Huynh's car, and therefore, the jury could have inferred that the front of Huynh's car was damaged in that collision. Furthermore, to the extent that the evidence could also support an inference that Huynh had previously been involved in a wreck prior to the one involving Rodriguez's truck, we must presume that the jury resolved that evidentiary conflict in favor of the conviction.

Similarly, although Rodriguez at one point described Huynh's car as stalled, Rodriguez also described the car as being "stopped" perpendicular to the flow of traffic with its lights off, and Rodriguez did not disagree in his answers with the State's assertion that Huynh's car was "parked" on the highway. Accordingly, the jury could have reasonably inferred that Huynh's car was not stopped due to a mechanical malfunction and was instead stopped due to actions taken by Huynh, and to the extent that the evidence could suggest that Huynh's car stalled, we must presume that the jury rejected that conflicting inference in favor of the conviction.

In summary, the jury could have reasonably inferred that Huynh drove his vehicle, and thereby operated his vehicle, while intoxicated prior to the collision with Rodriguez's truck and that Huynh stopped his car on the highway in an unsafe manner across two lanes of traffic with his lights turned off. *See Anderson v. State*, No. 02-15-00405-CR, 2016 WL 1605330, at *3 (Tex. App.—Fort Worth Apr. 21, 2016, no pet.) (mem. op., not designated for publication) (noting when determining that evidence was sufficient to support conviction for driving while intoxicated that defendant's "vehicle was found parked 'oddly' head-on across two spaces that had been marked diagonally"); *Thacker v. State*, No. 03-15-00079-CR, 2015 WL 6841415, at *5-6 (Tex. App.—Austin Nov. 6, 2015, pet. ref'd) (mem. op., not designated for publication) (determining that jury could reasonably infer that defendant was drunk when he operated his vehicle where evidence indicated that defendant had been drinking, where defendant was found unconscious inside car, and where vehicle "was found illegally and dangerously parked right alongside an active train track and in a location where he would have been hit had a train come down the track"); *see also Murphy v. State*, No. 03-13-00281-CR, 2014 WL 4179443, at *2 (Tex. App.—Austin Aug. 22, 2014, pet. ref'd) (mem. op., not designated for publication) (determining that evidence was legally sufficient to support determination that defendant operated his vehicle while intoxicated where evidence showed that he was discovered unconscious behind wheel of his car with engine running in roadway at 4:00 a.m., that he smelled like alcohol, and that he displayed signs of intoxication during field-sobriety tests).

As set out earlier, Huynh suggests that the evidence is insufficient to establish his guilt because the evidence indicates that Henk's car, not Huynh's, was the vehicle that actually struck Melton. Although there was conflicting testimony from Henk and from Melton regarding

12

which car struck Melton, in order for Huynh to be criminally liable, it is not necessary for the evidence to establish that his car was the one that actually collided with Melton; on the contrary, the State was only required to establish that Huynh's intentional, knowing, or reckless conduct resulted in Melton sustaining serious bodily injury or that Huynh's intentional, knowing, or reckless conduct resulted in Melton sustaining bodily injury while Huynh used or exhibited a deadly weapon. *See* Tex. Penal Code §§ 22.01(a)(1), .02(a). Given the evidence summarized previously, the jury could have reasonably inferred that Melton's injuries occurred when Henk's car collided with Melton or pushed Huynh's car into Melton. In addition, the jury could have reasonably inferred that Melton would not have been injured but for Huynh driving while intoxicated and stopping his car across two lanes of traffic on the highway at night without any headlights on in an area with low visibility and could have further inferred that Huynh was, at minimum, reckless when he engaged in those actions. *See id.* §§ 6.03(c) (stating that "[a] person acts recklessly . . . when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint"), .04(a) (providing that "[a] person is criminally responsible if the result would not have occurred but for his conduct").

Turning to Huynh's assertion that the evidence is insufficient to support a deadly-weapon finding, we note that although not designed for the purpose of inflicting serious bodily injury or death, an automobile "may, 'in the manner of its use or intended use [be] capable of causing death or serious bodily injury.'" *Moore v. State*, 520 S.W.3d 906, 908 (Tex. Crim. App. 2017) (quoting

13

Tex. Penal Code § 1.07(a)(17)(B)). "To justify a deadly weapon finding under Section 1.07(a)(17)(B), the State need not establish that the use or intended use of an implement actually *caused* death or serious bodily injury; only that 'the manner' in which it was either used or intended to be used was '*capable*' of causing death or serious bodily injury." *Id.* (quoting *Tucker v. State*, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008)). "Nor does the plain language of the provision require that the actor actually intend death or serious bodily injury." *Id.*

More typically, a deadly-weapon allegation is made in cases in which a defendant's driving was erratic or dangerous even if the driving did not actually result in any injuries. *See, e.g., id.* at 912-13 (upholding deadly-weapon finding where defendant "was driving his car in a state of intoxication that was almost three-and-a-half times the legal limit" and where evidence showed that defendant "caused a chain reaction of collisions that ultimately pushed" another vehicle into intersection when other cars had right of way); *Drichas v. State*, 175 S.W.3d 795, 796, 797, 798 (Tex. Crim. App. 2005) (concluding that deadly-weapon finding was warranted where defendant "disregarded traffic signs and signals, drove erratically, wove between lanes and within lanes, turned abruptly into a construction zone, knocking down barricades as he did so, and drove on the wrong side of the highway" when driving occurred in "early morning hours" with "'some' traffic . . . present"); *Cates v. State*, 102 S.W.3d 735, 738, 739 (Tex. Crim. App. 2003) (determining that deadly-weapon finding was not warranted where there was no evidence that defendant was speeding and where evidence showed that defendant obeyed traffic signals and that there was no other traffic); *Mann v. State*, 58 S.W.3d 132, 132 (Tex. Crim. App. 2001) (involving scenario in which defendant's car "nearly hit another vehicle head-on and . . . a collision was avoided only because the other driver took evasive action" and concluding that deadly-weapon determination was appropriate).

Although the facts at issue in this case may differ from a more typical case, we do not believe that the differences present here would prevent a jury from reasonably concluding that Huynh used or exhibited a deadly weapon. As set out above, the jury could reasonably infer from the evidence presented at trial that Huynh was driving while intoxicated on a highway and then elected to stop his car across two lanes of traffic and perpendicular to the flow of traffic. Furthermore, the jury could have reasonably inferred that Huynh stopped his car with his car lights off at night in a poorly light area on a highway that had some traffic traveling on the highway and that as a result of Huynh's actions, Rodriguez flipped his eighteen-wheeler while trying to avoid Huynh's car.

Based on the preceding, a rational jury could determine that Huynh was using his car in a manner that was capable of causing serious bodily injury or death regardless of whether he intended it to and regardless of whether his car ultimately impacted Melton. *See Moore*, 520 S.W.3d at 913.

For all of these reasons, we conclude that the evidence was legally sufficient to support Huynh's conviction and a deadly-weapon finding and that the district court did not err by denying Huynh's motion for directed verdict. Accordingly, we overrule Huynh's first issue on appeal.

**Concurrent Cause**

In his second issue on appeal, Huynh asserts that the district court "erred by submitting a Jury Charge that was defective on the issue of [c]ausation, thereby denying [him] his right to a fair trial."

Appellate courts review claims regarding alleged jury-charge errors under a two-pronged test, *see Swearingen v. State*, 270 S.W.3d 804, 808 (Tex. App.—Austin 2008, pet.

15

ref'd), with the first prong being a determination regarding "whether error exists" and with the second prong requiring courts to evaluate the harm caused by the error, *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). When determining whether a defensive instruction should have been provided, appellate courts "view the evidence in the light most favorable to the defendant's requested" instruction. *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006). In general, a defendant is entitled to a jury instruction on a defensive issue if the defensive issue "is raised by the evidence, regardless of the strength or credibility of that evidence." *Farmer v. State*, 411 S.W.3d 901, 906 (Tex. Crim. App. 2013); *see also Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999) (explaining that "[i]t is well settled that an accused has the right to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of the evidence"). However, an instruction "is not required" if the evidence "does not establish the defense." *Williams v. State*, Nos. 03-14-00228—00229-CR, 2016 WL 370019, at *4 (Tex. App.—Austin Jan. 27, 2016, no pet.) (mem. op., not designated for publication). Moreover, if a defendant is entitled to an instruction, "[a]n abstract instruction is not sufficient; the law must be applied to the facts in the case." *See Saenz v. State*, 474 S.W.3d 47, 51 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

When presenting this issue on appeal, Huynh contends that the jury charge should have included an instruction regarding concurrent causation as set out by section 6.04 of the Penal Code. That provision provides, in relevant part, as follows: "A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the

16

conduct of the actor clearly insufficient." Tex. Penal Code § 6.04(a). "If concurrent causes are present, two possible conditions exist to satisfy the 'but for' requirement: (1) the defendant's conduct may be sufficient by itself to have caused the harm, regardless of the existence of a concurrent cause; or (2) the defendant's conduct and the other cause *together* may be sufficient to have caused the harm." *Robbins v. State*, 717 S.W.2d 348, 351 (Tex. Crim. App. 1986).

Although Huynh recognizes that a similarly worded instruction was included in the definition portion of the jury charge, Huynh urges that this type of instruction should have been but was not included in the application portion of the jury charge. *Cf. Mallard v. State*, 162 S.W.3d 325, 334 (Tex. App.—Fort Worth 2005, pet. ref'd) (noting that "[t]he absence of an application paragraph incorporating the concept of concurrent causation means that the jury was not authorized to convict on a theory applying concurrent causation" and, therefore, concluding that inclusion of concurrent-causation instruction in abstract section did not egregiously harm defendant).

Furthermore, Huynh argues that an instruction should have been given because there was no evidence that his car actually injured Melton and because "the State presented evidence of multiple concurrent causes" or intervening acts that resulted in Melton being injured. In particular, Huynh asserts that "[t]here would have been no injury" if Henk's car "had not hit . . . Melton"; if "Melton had not stopped her car, gotten out, and walked up to an accident scene at night, in a portion of the highway with no lights and limited sight range"; and if Rodriguez had not struck Huynh's car, which caused Huynh's car to move from one side of the highway to the other. In light of the preceding, Huynh insists that his conduct was "insufficient on its own to cause" the injuries at issue "[b]ecause there were so many actions that had to occur before . . . Melton was injured." Relatedly, Huynh argues that Henk's car "striking Melton was clearly sufficient to cause her bodily injury."

17

For all of these reasons, Huynh asserts that the jury charge should have included an instruction regarding concurrent causation in the application part of the jury charge and that the failure to include this instruction prevented the jury from acquitting him if it decided that his conduct was insufficient to cause Melton's injuries but that one of the concurrent causes was sufficient.

As an initial matter, we note that it is not entirely clear that the events referred to by Huynh summarized above can accurately be described as concurrent causes. A concurrent cause is "[o]ne of two or more causes that simultaneously create a condition that no single cause could have brought about." *Concurrent Cause, Black's Law Dictionary* 173 (7th abridged ed. 2000); *see Concurrent, Black's Law Dictionary* 234 (7th abridged ed. 2000) (defining "concurrent" as "[o]perating at the same time"); *see also Saenz*, 474 S.W.3d at 50, 52 (determining that it was error to not include concurrent-cause instruction in jury charge for trial in which defendant was accused of intoxication manslaughter by striking pedestrian because there was evidence that defendant's "intoxication did not necessarily cause the collision" and that victim's conduct occurring at same time may have "caused his death" where evidence showed that collision happened at night on shoulder of highway, that shoulder was very narrow, that victim was wearing dark clothes, that victim was likely walking between shoulder and middle of lane in which he was struck, that victim was walking on wrong side of road, that defendant was not speeding, that victim had been on his phone right before collision, and that sober drivers would have had difficult time seeing pedestrian under these circumstances).

In the case present here, the actions that Huynh refers to were the direct result of and occurred after his stopping on the highway across two lanes of traffic. In other words, through his

actions, Huynh "set into motion a series of events that resulted in" Melton being injured. *Cf. Perez v. State*, No. 07-10-00390-CR, 2012 WL 1415712, at *3 (Tex. App.—Amarillo Apr. 24, 2012, no pet.) (mem. op., not designated for publication) (noting evidence demonstrating that defendant caused collision with motorcycle and observing further that defendant's "intoxication was also the cause of" third vehicle "even being involved in the collision").

In any event, no evidence was presented during the trial indicating that Rodriguez or Henk were driving recklessly on the night in question or committed any traffic violations before the collisions, and the evidence demonstrated that the collisions occurred as a result of dangerous conditions created by Huynh. Similarly, no evidence was presented during the trial suggesting that Melton would have been injured in the absence of Huynh's "contributory conduct." *See Remsburg v. State*, 219 S.W.3d 541, 545 (Tex. App.—Texarkana 2007, pet. ref'd); *see also Bell v. State*, 169 S.W.3d 384, 395 (Tex. App.—Fort Worth 2005, pet. ref'd) (noting defendant's assertion that victim did not die as result of defendant's driving but from defendant's girlfriend's allegedly independent act of opening door to hit victim; reasoning that defendant "presented no evidence that [his girlfriend]'s act of opening the door, by itself, was sufficient by itself to cause [victim]'s death . . . [a]bsent [defendant]'s act of actually driving the car"; and determining that trial court did not err by not including concurrent-causation instruction).

Accordingly, even viewing the evidence in favor of Huynh's requested instruction, "we cannot say that there is any evidence that" Huynh's conduct "was clearly insufficient" and that the conduct of Rodriguez and Henk, "alone, was clearly sufficient to produce the resulting assault." *See Remsburg*, 219 S.W.3d at 545. On the contrary, the testimony presented at trial supports, at

19

most, "an inference that the actions of" Huynh and the others "caused this occurrence" together. *See id.*; *see also Mejia v. State*, No. 14-96-01470-CR, 1999 WL 976533, at *1-2 (Tex. App.—Houston [14th Dist.] Oct. 28, 1999, no pet.) (not designated for publication) (determining that evidence was sufficient to support determination "that the commission of the arson caused bodily injury" to responding firefighter who injured his ankle when he stepped into hole located at scene because although "stepping in a hole in a poorly lit yard is sufficient to produce an ankle injury, the commission of an arson requiring the presence of a firefighter at a location where the concurrent conditions exist is also sufficient to produce an injury").

For these reasons, we conclude that the district court did not err by failing to include a concurrent-causation instruction in the application section of the jury charge. Accordingly, we overrule Huynh's second issue on appeal.

**Mens Rea for Aggravated Assault**

In his third issue on appeal, Huynh asserts that there was error in the jury charge because the mens rea requirement for aggravated assault was "improperly reduced . . . by using" driving while intoxicated "as a [m]anner or [m]eans of committing the offense."[3] When presenting

---

[3] In this issue, Huynh asserts similar claims regarding the indictment in this case. However, Huynh did not object to the alleged error in the indictment and does not assert on appeal that the indictment was insufficient to invoke the district court's subject-matter jurisdiction or provide him notice that the State intended to prosecute him for a felony offense. *See* Tex. Code Crim. Proc. art. 1.14(b) (explaining that "[i]f the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding"); *Teal v. State*, 230 S.W.3d 172, 182 (Tex. Crim. App. 2007) (determining that "the indictment, as a whole, was sufficient to vest the district court with subject-matter jurisdiction and give the defendant notice that

20

this issue on appeal, Huynh notes that the offense of assault requires that a defendant have acted intentionally, knowingly, or recklessly, *see* Tex. Penal Code § 22.01(a)(1), but that there is no mens rea requirement for driving while intoxicated, *see id.* § 49.04, because driving while intoxicated is a strict-liability offense, *see Burke v. State*, 28 S.W.3d 545, 549 (Tex. Crim. App. 2000) (noting that "mental state is irrelevant" for driving while intoxicated and that "[a] showing of intoxication replaces a showing of mens rea" under Penal Code provision governing offense of intoxication assault). Accordingly, Huynh urges that alleging driving while intoxicated as a manner or means "reduces the mens rea required" for aggravated assault because "the intentionally, knowingly, [or] recklessly standards don't apply." Additionally, Huynh notes that the jury charge did not provide a definition or set out the elements for driving while intoxicated, "leaving the jury no guidance on how to use one criminal offense as a means of committing another offense."[4]

the State intended to prosecute him for a felony offense" and concluding that defendant failed to timely object to substance of indictment and, therefore, "forfeited any right to object to indictment defects"). Accordingly, Huynh has failed to preserve his complaints regarding the indictment for appellate consideration. *See* Tex. R. App. P. 33.1 (setting out procedure for preserving complaint for appellate consideration).

[4] On appeal, Huynh also asserts that by charging him with aggravated assault rather than intoxication assault, the State improperly raised the offense level and sidestepped the requirement that there be a nexus between his alleged intoxication and Melton's injuries, meaning that Huynh could have been held liable regardless of how the injuries "came about." Although the State could have chosen to charge Huynh with intoxication assault (and did so before that conviction was vacated as set out earlier), that option does not prohibit the State from instead choosing to pursue an aggravated-assault charge when the facts of a particular case authorize that charge. *Cf. Shelby v. State*, 448 S.W.3d 431, 434, 440, 441 (Tex. Crim. App. 2014) (noting that aggravated-assault and intoxication-assault charges stemmed from same vehicle collision, concluding that conviction for both offenses violated defendant's "rights against double jeopardy," retaining "the aggravated assault conviction," and setting "aside [defendant]'s conviction for intoxication assault"). Moreover, although the aggravated-assault provision does not include intoxication as an element of the offense, it does require, in the manner charged here, that the defendant's actions cause bodily injury or serious bodily injury to a victim. *See* Tex. Penal Code §§ 22.01(a)(1), .02(a).

When resolving this issue on appeal, we will assume without deciding that there was error in the jury charge. As set out above, when reviewing an alleged jury-charge error, appellate courts first determine whether error exists and then, if so, ascertain whether the resulting harm is sufficient to warrant a reversal. *See Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015); *Ngo*, 175 S.W.3d at 743. The amount of harm needed for a reversal depends on whether a complaint regarding "that error was preserved in the trial court." *Swearingen*, 270 S.W.3d at 808. If the defendant made a timely objection, reversal is required if there has been "*some* harm." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). However, if no objection was made, a reversal is warranted only if the error resulted in "egregious harm." *See Neal v. State*, 256 S.W.3d 264, 278 (Tex. Crim. App. 2008).

In this case, Huynh did not present to the district court the complaints regarding the jury charge that he asserts on appeal, and we, therefore, must determine whether he was egregiously harmed. "Jury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim. App. 2008). "The purpose of the egregious-harm inquiry is to ascertain whether the defendant has incurred actual, not just theoretical, harm," *Swearingen*, 270 S.W.3d at 813, and "reversal for an unobjected-to erroneous jury instruction is proper only if the error caused actual, egregious harm to" the defendant, *Arrington v. State*, 451 S.W.3d 834, 840 (Tex. Crim. App. 2015). "[E]gregious harm is a difficult standard" to meet. *Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002). Neither side has the burden of establishing either the presence or a lack of harm. *See Warner v. State*, 245 S.W.3d 458, 464 (Tex. Crim. App. 2008). Instead, the reviewing court makes

22

"its own assessment" when evaluating what effect an error had on the verdict by looking at the record before it. *Ovalle v. State*, 13 S.W.3d 774, 787 (Tex. Crim. App. 2000). "When assessing harm based on the particular facts of the case, we consider (A) the entire jury charge; (B) 'the state of the evidence[,] including contested issues and the weight of the probative evidence'; (C) the parties' arguments; and (D) all other relevant information in the record." *Arrington*, 451 S.W.3d at 840 (quoting *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011)). The analysis is "fact specific and is done on a 'case-by-case basis.'" *Id.* (quoting *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013)).

*Entire Jury Charge*

Turning to the first factor, although Huynh suggests that the inclusion of driving while intoxicated as one of the alternative manners or means of committing the offense eliminated the need for the jury to determine that Huynh had one of the requisite mental states for committing aggravated assault, the abstract section of the jury charge stated that a person commits the offense of aggravated assault if he "intentionally, knowingly, or recklessly causes . . . serious bodily injury to another" or if he "intentionally, knowingly, or recklessly causes bodily injury to another" and "uses or exhibits a deadly weapon during the commission of the assault," and the abstract section set out the statutory definitions for intentional, knowing, and reckless conduct. Similarly, the application section instructed the jury that it could only find Huynh guilty of aggravated assault if it determined that he "intentionally, knowingly, or recklessly cause[d] serious bodily injury to . . . Melton" or if it determined that he "intentionally, knowingly, or recklessly cause[d] bodily injury to . . . Melton" while using or exhibiting a deadly weapon. Moreover, nothing in the jury charge

23

suggested that the jury could disregard the mental-state requirement of the charged offense if it found that Huynh was driving while intoxicated. Further, although Huynh asserts that the failure to include the elements of the offense of driving while intoxicated harmed him, we note that the abstract section did set out the statutory definition for "intoxicated," including the portion specifying that an individual is intoxicated if his blood alcohol concentration is 0.08 or more. Accordingly, the jury had the tools necessary for making a determination regarding whether Huynh was intoxicated when driving his car on the night in question.

For these reasons, we conclude that the first factor weighs against a determination that Huynh suffered egregious harm as a result of the alleged error.

*State of the Evidence*

As for the state of the evidence, we previously determined that the testimony from the various witnesses regarding observations of Huynh after the collisions, regarding how and where Huynh's car was stopped on the highway, regarding admissions that he made while being treated, and regarding the results of the blood-alcohol testing performed on a sample of Huynh's blood was sufficient to allow the jury to infer that Huynh was driving while intoxicated on the night in question. Similarly, we previously concluded that the evidence presented at trial was sufficient to allow the jury to infer that Huynh acted, at a minimum, recklessly and caused serious bodily injury to Melton on the night in question or caused bodily injury to Melton on the night in question while using or exhibiting a deadly weapon.

For those same reasons, we must conclude that the state of the evidence weighs in favor of a determination that Huynh was not egregiously harmed by the alleged jury-charge error.

24

*Arguments by the Parties and Remainder of the Record*

Turning to the arguments of the parties, the State repeatedly mentioned during voir dire that the State was required to prove that Huynh "intentionally, knowingly[,] or recklessly" caused bodily injury or serious bodily injury and provided a definition for those types of injuries. In addition, the State explained that an individual is intoxicated if he does not have "the normal use of" his mental or physical "faculties" or has "a blood alcohol concentration of 0.08 or more," and the State also provided some examples regarding what constitutes an impairment to an individual's physical or mental faculties.

In his closing arguments at the end of the guilt-or-innocence phase, Huynh did not mention the mental states for aggravated assault and instead argued that he did not cause the injuries to Melton. In contrast, in its closing arguments, the State repeatedly stated that the jury could only convict Huynh of aggravated assault if the jury determined that Huynh acted intentionally, knowingly, or recklessly and did not suggest that Huynh could be convicted of that offense without having one of the requisite mental states. Further, the State presented separate arguments regarding each mental state and urged that the evidence demonstrated that Huynh intentionally, knowingly, or recklessly parked his car on the highway. Additionally, the State specifically linked the mental states to the four manners or means by which Huynh allegedly caused bodily injury or serious bodily injury. Finally, the State summarized the evidence indicating that Huynh was intoxicated on the night in question.

In light of the preceding, particularly the focus on the required mental states needed for an aggravated-assault conviction, we must conclude that the arguments made by the parties at

25

various points throughout the trial weigh in favor of a determination that Huynh was not egregiously harmed by the alleged jury error. Moreover, nothing in the remaining portions of the record supports a determination that Huynh was egregiously harmed in this case.

Given our resolution of the factors above, we conclude that if there was error in the jury charge as alleged by Huynh, he was not egregiously harmed by the error. Accordingly, we overrule Huynh's final issue on appeal.

## CONCLUSION

Having overruled Huynh's three issues on appeal, we affirm the district court's judgment of conviction.

_____

David Puryear, Justice

Before Justices Puryear, Goodwin, and Bourland

Affirmed

Filed:   August 29, 2018

Do Not Publish